2003-NMSC-011

68 P.3d 901

Frieda PADILLA, Plaintiff–Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Petitioner.

No. 27,258.

Supreme Court of New Mexico.

May 15, 2003.

**662**

Miller, Stratvert & Torgerson, P.A., Rudolph A. Lucero, Ruth Fuess, Santa Fe, NM, for Petitioner.

Montoya, Murphy & Garcia, LLC, Dennis P. Murphy, Santa Fe, NM, L. Helen Bennett, Albuquerque, NM, for Respondent.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, for Amicus Curiae New Mexico Defense Lawyers Association.

Michael B. Browde, Albuquerque, NM, for Amicus Curiae New Mexico Trial Lawyers Association.

## OPINION

SERNA, Justice.

{1} On respective motions for rehearing by the parties, the opinion previously filed in this matter is hereby withdrawn and the following substituted in its place. The parties' motions for rehearing are otherwise denied, as are the requests filed by amici.

{2} Plaintiff–Respondent Frieda Padilla purchased automobile insurance from Defendant–Petitioner State Farm Mutual Automobile Insurance Company. Padilla was involved in an automobile accident with a third party. Following a settlement with the third party's insurance company for the liability limit of $25,000, Padilla filed a claim against her own insurance company, State Farm, for uninsured motorist coverage under four separate policies, each of which provided for uninsured motorist coverage with limits of $25,000 per person and $50,000 per accident. Padilla's insurance contract with State Farm provided for mandatory arbitration, which would be binding on both parties for any award of damages that does not exceed the limits of the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (1983, as amended through 2001) (MFRA). For awards over this amount, the contract provided that the arbitration was subject to de novo appeal by either party. Padilla sought a declaratory judgment in district court nullifying the de novo appeal language as contrary to New Mexico law. The district court determined that a case from this Court, *Bruch v. CNA Ins. Co.*, 117 N.M. 211, 870 P.2d 749 (1994), was controlling and ruled in favor of State Farm. The Court of Appeals reversed, determining that the contractual provision of a de novo appeal violates public policy and declaring the contract provision void. *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2002–NMCA–001, ¶ 1, 131 N.M. 419, 38 P.3d 187, *cert. granted*, No. 27,258, 131 N.M. 564, 40 P.3d 1008 (2002). This Court then granted State Farm's petition for writ of certiorari to the Court of Appeals. We address whether the "escape hatch" arbitration clause that allows either party to the contract a de novo appeal of awards in excess of the limits of the MFRA violates New Mexico public policy. We conclude that the clause is in violation of public policy, but we select a different remedy than the one selected by the Court of Appeals.

### I. *Bruch* and the Court of Appeals' Opinion

{3} In *Bruch*, the insured filed a claim with her insurance company for uninsured motorist benefits. 117 N.M. at 212, 870 P.2d at 750. The insurance contract contained an arbitration provision that mirrors the provision at issue in this case, under which arbitration would be binding for amounts not

exceeding the minimum limit provided by law and would be subject to a de novo appeal by either party for any higher amounts. *Id.* Like Padilla, the insured in *Bruch* argued "that the insurance clause that allows [the insurance company] to request a trial violates public policy." *Id.* at 213, 870 P.2d at 751. This Court unequivocally rejected that argument. The Court concluded that "[o]ur [L]egislature has not expressed its intent that an arbitration award should be final in cases in which the parties have provided to the contrary by contract; the [Uniform Arbitration] Act[, NMSA 1978, §§ 44–7–1 to –22 (repealed 2001),] is supportive of the parties' right to contract for arbitration." *Id.* We further held that the provision is not "repugnant to public policy." *Id.*

{4} The Court of Appeals concluded that *Bruch* was distinguishable from the present case because this Court had not considered the specific arguments and specific authority advanced by Padilla. *Padilla*, 2002–NMCA–001, ¶¶ 1, 9, 131 N.M. 419, 38 P.3d 187. The Court of Appeals stated that in *Bruch*

> [t]he Supreme Court made absolutely no mention of the arguments ... that an arbitration provision providing for non-binding arbitration where the insured recovers more than the minimum limit of uninsured motorist coverage violates the superintendent's regulations or the Unfair [Insurance] Practices Act[, NMSA 1978, §§ 59A–16–1 to –30 (1984, as amended through 2001) ], or is otherwise contrary to the public policy manifested in the uninsured motorist statute[, NMSA 1978, § 66–5–301 (1983) ].

*Padilla*, 2002–NMCA–001, ¶ 9, 131 N.M. 419, 38 P.3d 187.[1] The Court of Appeals concluded that *Bruch* is not authority for propositions not considered and "does not necessarily control the outcome of the present case." *Id.* ¶ 10. We disagree.

{5} We believe that the principle that cases do not stand for propositions not considered is inapplicable in this context. This principle is intended to dissuade a later court from attributing meaning to an earlier opinion that was not contemplated by its drafters. *See Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 84 N.M. 343, 347–48, 503 P.2d 323, 327–28 (1972) ("This Court, by mere inference or presumption, cannot logically be considered to have overruled the long line of cases ... which have expressly dealt with the subject of sovereign immunity."). We do not view this principle as applying to the mere citation to new authorities or even to advancing new reasons for reaching a different conclusion on an issue that was actually considered by this Court in the earlier case. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("The question whether judicial review of questions of law raised by an arbitration award is permitted under the Arbitration Act was not argued or briefed in [two earlier decisions]. Thus, neither of those decisions discussed the *issue* decided here.") (emphasis added). Instead, we view arguments of this nature as a request to overrule the earlier decision. If the mere citation of new authority or even reliance on a different justification than was presented in a prior case were sufficient to

---

1. We note that even though the Court of Appeals specified three new arguments made by Padilla, it rejected Padilla's arguments regarding insurance regulations and unfair claims practices under NMSA 1978, § 59A–16–20(K) (1997), *Padilla*, 2002–NMCA–001, ¶¶ 14, 22, 131 N.M. 419, 38 P.3d 187, and relied only on the argument that the provision is contrary to the public policy contained in the uninsured motorist statute, *e.g.*, *id.* ¶ 20 ("We conclude that public policy, as manifested in our uninsured motorist statute, distinguishes the present case from *Bruch*."). The Court of Appeals viewed *Bruch* as relying only on the public policy contained in the Uniform Arbitration Act and as having not considered the uninsured motorist statute. *Id.* ¶ 15. However, *Bruch* involved a claim for uninsured motorist coverage and discussed *Dairyland Insurance Co. v. Rose*, 92 N.M. 527, 591 P.2d 281 (1979), *Bruch*, 117 N.M. at 213, 870 P.2d at 751, which analyzed the relationship between the Uniform Arbitration Act and the uninsured motorist statute. While the policies underlying the uninsured motorist statute were not specifically discussed, we believe that the consideration of these policies is implicit in the conclusion that the provision is not "repugnant to public policy." *See Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.*, 19 Cal.4th 1182, 81 Cal.Rptr.2d 521, 969 P.2d 613, 620 (1999) ("It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court."). Therefore, we do not believe that Padilla's argument concerning the uninsured motorist statute distinguishes this case from *Bruch*.

strip a case of precedential value, the doctrine of stare decisis would virtually disappear.

{6} *Bruch* addressed the question raised in this case: whether an uninsured motorist clause in an insurance contract providing for a de novo appeal from arbitration awards over a specified amount violates public policy in New Mexico. The Court of Appeals did not determine that the present case involves a different issue than *Bruch* or facts that distinguish this case from the analysis in *Bruch.* Padilla's argument in this case is that *Bruch* was wrongly decided. Padilla relies on new cases and new arguments in order to undermine the rationale of *Bruch,* even devoting an entire section of her brief to an argument that State Farm's escape hatch provision violates the Uniform Arbitration Act. This argument directly contradicts the holding in *Bruch* that "the [Uniform Arbitration] Act is supportive of the parties' right to contract for arbitration." 117 N.M. at 213, 870 P.2d at 751. Even though the Court of Appeals concluded that *Bruch* was distinguishable, there is no question that, in order for the Court of Appeals' opinion to stand, the holding in *Bruch* that contract provisions of this nature do not violate public policy would have to be viewed as overruled. In other words, the holding by the Court of Appeals that this contractual provision violates public policy and cannot preclude an insured from enforcing an arbitration award to the extent of the minimum limits in effect overrules the holding in *Bruch* that the insurer is entitled to enforce the provision as written. Therefore, because the issue in the present case, whether the contract violated public policy, was addressed by this Court in *Bruch,* we conclude that *Bruch* is authority for this considered proposition and, as determined by the district court, is binding precedent in this case. *State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (stating that "the Court of Appeals ... remains bound by Supreme Court precedent"). The question we must consider on certiorari, then, is whether Padilla has articulated a sufficient reason to overrule *Bruch.* Although we disagree with the Court of Appeals that this case is distinguishable from *Bruch,* we believe that the policy arguments

made by Padilla, and adopted by the Court of Appeals, provide a compelling reason to overrule *Bruch* and conclude that the holding in *Bruch* is flawed. *See Wilson,* 116 N.M. at 796, 867 P.2d at 1178 ("[T]his Court encourages the Court of Appeals to express its rationale for any reservations it might harbor over Supreme Court precedent.").

## II. Stare Decisis

{7} The principle of stare decisis dictates adherence to precedent. This doctrine "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Therefore, "the doctrine of stare decisis is of fundamental importance to the rule of law," *Welch v. Tex. Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), and "it lies at the very core of the judicial process of interpreting and announcing law." *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 33, 125 N.M. 721, 965 P.2d 305. While *"[s]tare decisis* is not an inexorable command," *Payne,* 501 U.S. at 828, 111 S.Ct. 2597, we require a compelling reason to overrule one of our prior cases. *Trujillo,* 1998 NMSC 031, ¶ 34, 125 N.M. 721, 965 P.2d 305; *accord Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) ("[A]ny departure from the doctrine of stare decisis demands special justification.").

Particular questions must be considered before overturning precedent: 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule "no more than a remnant of abandoned doctrine;" and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have "robbed the old rule" of justification.

*Trujillo,* 1998–NMSC–031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (quoting *Planned Parenthood v. Casey,* 505 U.S. 833, 855, 112 S.Ct.

2791, 120 L.Ed.2d 674 (1992)). "This Court always demonstrates the highest regard for stare decisis, but when one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent." *Id.* ¶ 35.

### III. Public Policy

{8} As stated previously, we determined in *Bruch* that a contractual provision like the one in the instant case, which provides for mandatory arbitration that is binding as long as the award does not exceed the limits of the MFRA and is subject to a de novo appeal by either party for higher awards, does not offend public policy. 117 N.M. at 213, 870 P.2d at 751. We did not believe that the contractual provision at issue violated public policy, despite the fact that it allowed de novo appeals only under the limited circumstance of an award exceeding statutory limits. *See id.* We now revisit this determination.

▇▇▇ {9} We will not enforce a contractual provision that violates public policy. *Bruch*, 117 N.M. at 213, 870 P.2d at 751; *accord Phoenix Indem. Ins. Co. v. Pulis*, 2000–NMSC–023, ¶ 20, 129 N.M. 395, 9 P.3d 639. We agree with Padilla that the de novo appeal provision in this insurance contract contravenes the policies underlying the uninsured motorist statute. In New Mexico, insurers providing liability coverage must offer, subject to an insured's right of rejection, uninsured and underinsured motorist coverage for the minimum limits contained in NMSA 1978, § 66–5–215 (1983) and "such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy." Section 66–5–301(A). This statute

> embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions. The statute was intended to expand insurance coverage and to protect

individual members of the public against the hazard of culpable uninsured motorists. *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). "The legislative purpose of this law is to place the insured in the same position as to the recovery of damages that he [or she] would have been in had the tort-feasor had liability insurance." *State Farm Mut. Auto. Ins. Co. v. Maidment*, 107 N.M. 568, 572, 761 P.2d 446, 450 (Ct.App.1988). Relying on this important public policy, we interpreted Section 66–5–301 to provide for the stacking of multiple uninsured motorist policies purchased by the insured, *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985), and New Mexico courts have invalidated contract provisions in uninsured motorist policies that excluded coverage of punitive damages, *Stinbrink v. Farmers Ins. Co. of Ariz.*, 111 N.M. 179, 180–81, 803 P.2d 664, 665–66 (1990), that provided for the splitting of costs of arbitration, *id.* at 181–82, 803 P.2d at 666–67, that excluded coverage while occupying a vehicle other than the one insured, *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329–30, 533 P.2d 100, 102–03 (1975), that prevented stacking through ambiguous language, *Schmick*, 103 N.M. at 220–21, 704 P.2d at 1096–97, or through clear and unambiguous language, *Jimenez v. Found. Reserve Ins. Co.*, 107 N.M. 322, 324–25, 757 P.2d 792, 794–95 (1988), and that excluded household members from coverage, *Martinez v. Allstate Ins. Co.*, 1997 NMCA 100, ¶ 18, 124 N.M. 36, 946 P.2d 240.

{10} On its face, the provision at issue in the present case creates an unfair limitation on an insured's access to a de novo appeal and creates an inequity in the certainty of an arbitration award. Under the contract provision, issues of both the liability of the uninsured motorist and damages are subject to arbitration.[2] In the event that an award exceeds the minimum limits of the MFRA, all issues decided by arbitration are subject to de novo appeal. As a result, a finding in favor of State Farm on the issue of liability,

---

2. The contract explicitly provides that these two issues, liability and damages, are subject to arbitration. It is unnecessary for us to decide wheth-

er additional issues would also be subject to arbitration under this contract.

i.e., a finding that the uninsured driver is not liable, will never be subject to de novo appeal, while a finding in favor of an insured that the uninsured motorist is liable will be put at risk in the event that damages exceed the statutory minimum, because there could be a finding of no liability in the de novo appeal. In addition, with respect to findings on the issue of damages, although State Farm notes that the de novo appeal is available to both parties and correctly observes that an insured might wish to appeal an award that exceeds the statutory minimum but is lower than the damages requested, we believe that the provision unreasonably benefits the insurer over an insured.

> Although facially equal, such escape hatch clauses are not truly equal in their effect on the parties. This is true because both parties are bound by a low award, when an insurance company is unlikely to appeal, and not bound when there is a high award, when an insurance company is more likely to appeal. Thus, the benefits of the clause truly only favor the insurer, which can use the clause to escape the unwary claimant.

*Parker v. Am. Family Ins. Co.*, 315 Ill. App.3d 431, 248 Ill.Dec. 375, 734 N.E.2d 83, 85 (2000) (citations omitted); *accord Schmidt v. Midwest Family Mut. Ins. Co.*, 426 N.W.2d 870, 873 (Minn.1988) ("Though [the insured] was afforded a theoretical contract right to demand a trial de novo following arbitration, as a practical matter any benefit to him flowing from that right is in reality ephemeral. Rarely, if ever, would one in his position assert it."). We believe that this inequity only serves to exacerbate the already unequal bargaining position occupied by the insured, *see Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989), and gives the insurer undue leverage to compel an insured to accept an unfavorable settlement.

{11} We also agree with the Court of Appeals that the de novo appeal provision interferes with the statutory goal of placing the insured in the same position for the recovery of damages as he or she would have been in had the tortfeasor carried liability insurance. *See Padilla*, 2002–NMCA–001, ¶ 17, 131 N.M. 419, 38 P.3d 187. The de novo appeal provision forces an insured to undergo costly sequential litigation in order to secure an award of damages, without also receiving the corresponding benefit of being able to seek relief from an unfavorable judgment. The provision thus "unreasonably diminish[es] the statutorily mandated coverage." *Dominguez v. Dairyland Ins. Co.*, 1997–NMCA–065, ¶ 10, 123 N.M. 448, 942 P.2d 191.

{12} We do not believe that the Legislature intended to allow insurers to impose financial disincentives on the recovery of damages to which the insured is entitled based on the insured's purchase of additional insurance that the insurer is statutorily mandated to offer. We believe that this provision creates an undue chilling effect on uninsured motorist claims. We are particularly disturbed by the potential chilling effect that the provision at issue in this case might have on an insured's right to stacking. In *Allstate Insurance Co. v. Perea*, 2000–NMCA–070, ¶¶ 18–21, 129 N.M. 364, 8 P.3d 166, the Court of Appeals determined that, for purposes of a de novo appeal provision like the one at issue in this case, the contractual reference to the minimum limits of the MFRA does not include stacking, meaning that the de novo appeal provision applies to any award over $25,000. As a result, an insured who enforces the contractual and statutory right to stacking, thereby receiving greater than $25,000 in damages, is more likely to face the greater cost, delay, and risk of a trial de novo. We are unwilling to enforce a provision that undermines the public policy supporting stacking and that allows the insurer to accomplish indirectly what it is precluded from doing directly. *See Jimenez*, 107 N.M. at 325, 757 P.2d at 795 ("[A]n insurer's attempt by a limiting clause to preclude stacking of additional coverage separately paid for by the insured violates the clear policy of the uninsured motorist statute, which intends that an injured party be compensated to the extent of coverage obtained by or for the injured party.").

{13} Based on these considerations, we believe that this provision would frustrate the statutory goal of protecting the insured against financially irresponsible motorists

and "would have a chilling effect on uninsured motorists' claims." *Stinbrink,* 111 N.M. at 182, 803 P.2d at 667. We conclude that the provision is "incompatible with New Mexico's announced public policies to encourage arbitration and to protect persons from uninsured drivers by placing injured parties in the same or similar position they would have been in had they been dealing with a person with liability insurance." *Id.* at 182, 803 P.2d at 667.

{14} On reconsideration of this issue, we conclude that *Bruch* has revealed itself to be so unworkable as to be intolerable. We believe that *Bruch* interferes with the legislative objectives inherent in the uninsured motorist statute and that it was improvidently decided. *See Payne,* 501 U.S. at 827, 111 S.Ct. 2597 (stating that departure from stare decisis is appropriate if "governing decisions are unworkable or are badly reasoned"); *Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ("Another traditional justification for overruling a prior case is that a precedent may be a positive detriment to coherence and consistency in the law ... because the decision poses a direct obstacle to the realization of important objectives embodied in other laws."). Therefore, *Bruch* and its progeny, *Perea,* 2000–NMCA–070, ¶ 21, 129 N.M. 364, 8 P.3d 166, are hereby expressly overruled. *See First Fin. Trust Co. v. Scott,* 1996–

NMSC–065, ¶ 17, 122 N.M. 572, 929 P.2d 263 ("The doctrine of stare decisis does not preclude us from overruling improvident precedent, even recent precedent."). We conclude that the limited de novo appeal provision in the insurance contract at issue in this case violates public policy and is void as substantively unconscionable. *See Guthmann v. La Vida Llena,* 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) ("Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair.").[3]

■ {15} As a final matter, we must decide the proper remedy for the void provision.

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*State ex rel. State Highway & Transp. Dep't v. Garley,* 111 N.M. 383, 389, 806 P.2d 32, 38 (1991) (quoting Restatement (Second) of Contracts § 208 (1979)). *Compare Parker,* 248 Ill.Dec. 375, 734 N.E.2d at 86 ("[I]n order to preserve the parties' agreement to the greatest extent possible and because ar-

---

**3.** Because we determine that this provision violates the uninsured motorist statute, we need not address Padilla's additional argument that the de novo appeal provision violates the policies underlying the Uniform Arbitration Act or reconsider the determination in *Bruch* that the Act's policy supporting a right to contract for arbitration includes the right to determine whether the arbitration will be binding on the parties. We also do not rely on Padilla's argument that the costs of sequential litigation are prohibitive. While the Court of Appeals correctly characterized the policy as a contract of adhesion, *Padilla,* 2002–NMCA–001, ¶ 19, 131 N.M. 419, 38 P.3d 187; *see Roberts Oil Co. v. Transam. Ins. Co.,* 113 N.M. 745, 753, 833 P.2d 222, 230 (1992) ("[A]n insurance policy is a contract of adhesion ...."), we note that this fact alone is insufficient to invalidate the de novo appeal provision. *See Guthmann,* 103 N.M. at 509, 709 P.2d at 678 ("A court will refuse to enforce an adhesion contract or a provision thereof only when the contract or provision is unfair."); *see also Lytle v. CitiFinancial Servs., Inc.,* 2002 PA Super. 327, ¶ 20, 810 A.2d 643, 658 ("Even where a contract is found

to be a contract of adhesion, the terms of the contract must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable."); *Graham v. State Farm Mut. Auto. Ins. Co.,* 565 A.2d 908, 912 (Del.1989) ("The fact that a contract is adhesive does not give rise to a presumption of unenforceability."). If an insurance contract does not violate public policy, is not grossly unfair due to terms that unreasonably favor the insurer, and is unambiguous, "we must give effect to the contract and enforce it as written." *Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000–NMSC–033, ¶ 11, 129 N.M. 698, 12 P.3d 960. A prevailing insured is entitled by statute to recover the costs of arbitration. *See Stinbrink v. Farmers Ins. Co. of Ariz.,* 111 N.M. 179, 181–82, 803 P.2d 664, 666–67 (1990). Padilla has not established adequate facts in the record to support a finding of unconscionability on this ground. *See Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (stating that the mere " 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement").

bitration is an encouraged form of dispute resolution in Illinois, we hold that only the trial de novo clause is unenforceable and that the trial court properly entered a judgment confirming the arbitration panel's decision."), *with Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242, 1248 (1992) (plurality opinion) (determining that an "escape hatch" arbitration provision did not qualify as "true arbitration" and holding that "the entire agreement to 'arbitrate' clause is unenforceable").

{16} The Court of Appeals determined,

> Should the arbitrators award Padilla damages in excess of $25,000, State Farm may exercise its contractual right to 'trial on all issues.' However, pursuant to NMSA 1978, § 44–7–11 (1971), Padilla may apply for judicial confirmation of the award to the extent of $25,000, together with such costs and fees as may be allowable, regardless of State Farm's decision to seek a trial de novo. Upon confirmation of the award, Padilla may enforce the judgment and may assert the judgment to collaterally estop State Farm from relitigating the uninsured/under-insured motorist's liability and Padilla's entitlement to $25,000 in damages.

*Padilla*, 2002–NMCA–001, ¶ 21, 131 N.M. 419, 38 P.3d 187. We are not persuaded that this is the proper remedy in this case.

{17} Although the provision in this case only applies to amounts above the statutory minimum, the policies of Section 66–5–301 extend beyond these limits. *See Martinez*, 1997–NMCA–100, ¶ 18, 124 N.M. 36, 946 P.2d 240 (holding that a household exclusion provision violated the policies of the uninsured motorist statute, despite the fact that the limiting provision applied only to amounts exceeding the statutory minimum of the MFRA); *cf. State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002–NMSC–030, ¶ 15, 132 N.M. 696, 54 P.3d 537 (relying on *Martinez* and concluding that "the policy of protecting innocent accident victims within the [MFRA] and the policy against familial exclusion or limitation extend beyond the minimum amount of coverage required by law"). The policy of placing the insured in the same position as to the recovery of damages as if the tortfeasor had liability insurance applies beyond the minimum limits in Section 66–5–215 and extends to the full amount of uninsured or underinsured motorist coverage purchased by the insured under Section 66–5–301. *See Schmick*, 103 N.M. at 219, 704 P.2d at 1095 ("[T]he intent of the Legislature was to put an injured insured in the same position he [or she] would have been in had the tortfeasor had liability coverage *in an amount 'equal to the uninsured/underinsured motorist protection purchased for the insured's benefit.'*") (emphasis added). Therefore, to the extent that State Farm continues to enjoy the unfair advantage over an insured to a right to a de novo appeal for amounts in excess of $25,000 under the Court of Appeals' analysis, we believe that this relief is inadequate to remedy the violation of the policies underlying the uninsured motorist statute.

{18} In our effort to ensure that we limit the application of the unconscionable term in a manner that avoids the unconscionable result, we find guidance in the decisions of other jurisdictions. In *Zak v. Prudential Property & Casualty Insurance Co.*, 713 A.2d 681 (Pa.Super.Ct.1998), the court considered a clause similar to the one at issue in the present case. The insurance contract in *Zak* provided that "[a] decision agreed to by two arbitrators will be binding if the award does not exceed the limits required under the Financial Responsibility Law of Pennsylvania. If an arbitration award exceeds these limits, either party has a right to trial on all issues in a court of competent jurisdiction." *Id.* at 683. As we conclude in this opinion, the court determined in *Zak* that this clause was against public policy and unconscionable. *Id.* at 684–85. The court determined that the most appropriate remedy would be striking the clause in the contract providing for a de novo appeal. *Id.* at 685.

> Declaring this clause void does not have the effect of voiding the provision calling for the parties to arbitrate disputes, which is entirely separate and distinct. By striking the clause, we make both parties subject to the same procedures. Thus, our holding has the effect of denying the insurer the right to a trial on all issues if an

award is entered in favor of a claimant or insured. The parties however remain subject to the agreement to arbitrate, which is a separate clause and not against public policy. The effect of our holding is to make an arbitration award equally binding on both parties.

*Id.; accord Fittante v. Palm Springs Motors, Inc.,* 105 Cal.App.4th 708, 129 Cal. Rptr.2d 659, 674 (2003) ("The appeal clause affects only a post-award proceeding, not the general conduct of the arbitration itself. The appeal clause is thus severable from the remainder of the arbitration agreement."). To avoid the unconscionable result, we strike the de novo appeal provision in the contract and leave the remainder of the contract intact. Because the appeal provision is severable from the agreement to arbitrate, the insurance contract now contains a mutual agreement to binding arbitration.

{19} In the prior, now withdrawn, opinion filed in this case, we had invalidated the entire arbitration clause. We reasoned in part that this remedy was supported by our recent opinion in *Lisanti v. Alamo Title Insurance of Texas,* 2002–NMSC–032, ¶¶ 15–16, 132 N.M. 750, 55 P.3d 962. Based on the severability of the provision, however, we view binding arbitration in this case to be a voluntary agreement. *See Bd. of Educ. v. Harrell,* 118 N.M. 470, 475–76, 882 P.2d 511, 516–17 (1994) (distinguishing between voluntary arbitration and "nonconsensual submission" to state-mandated arbitration). Consequently, *Lisanti's* application to this case was not before this Court, and we do not decide that question in this opinion. Further, as we have articulated above, a different remedy is more consistent with the bases for concluding that the contract cannot be enforced as written. For these reasons, we have revised our prior opinion by modifying the mandate.

## IV. Conclusion

{20} We conclude that the limited de novo appeal provision in the insurance contract violates public policy and is therefore void. We overrule our holding to the contrary in *Bruch.* We hold that the unequal access to an appeal is unenforceable and that the contract thus provides for voluntary binding arbitration.

{21} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, RICHARD C. BOSSON, and EDWARD L. CHAVEZ, Justices.