This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 4, 2025**

**No. S-1-SC-40395**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**BREON LAMONT KINDRED,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clara Moran, District Judge**

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

**DECISION**

**BACON, Justice.**

**{1}** Defendant Breon Lamont Kindred was found guilty by a jury of the first-degree murder (willful and deliberate) of Decedent Lavon King. On appeal, Defendant claims reversal is required due to instructional error, evidentiary error, and improper prosecutorial questioning during voir dire. We exercise our discretion under Rule 12-405(B) NMRA to affirm Defendant's conviction by nonprecedential decision. *See State v. Byram*, S-1-SC-40149, dec. ¶ 1 (N.M. May 19, 2025) (nonprecedential) ("We exercise

our discretion to affirm [the d]efendant's conviction by nonprecedential decision and thus limit our discussion of the law and the facts to that necessary to decide the merits of this appeal.").

## I.  BACKGROUND

**{2}** As a preliminary matter, we note that Defendant, in violation of Rule 12-318(A)(3) NMRA, lacks supporting citations in multiple instances for his representation of the underlying facts and the course of proceedings. *See* Rule 12-318(A)(3) ("The brief in chief of the appellant . . . shall contain . . . a summary of proceedings, briefly describing the nature of the case, the course of proceedings, and the disposition in the court below, and including a summary of the facts relevant to the issues presented for review. This summary shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation."). As a consequence, we do not cite Defendant's representations of the factual and procedural background where his brief in chief is relevantly deficient. *See id.* ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition.").

**{3}** Defendant testified to the following events of June 27, 2023. Defendant received a phone call from a friend informing him that Decedent, armed, was seen riding Defendant's stolen custom bicycle at a particular location. Defendant rode his moped ("scooter") to that location and, upon seeing Decedent, hit his horn and yelled at Decedent to leave the bicycle. Defendant, with his firearm drawn, crashed his scooter as he approached Decedent, then quickly got up with gun still drawn and fired when he perceived Decedent reaching across his body for his own firearm.

**{4}** As captured on surveillance video, the encounter between the two men lasted about six seconds. Defendant then took the bicycle and rode it home, returning subsequently to regain his scooter.

**{5}** Defendant was charged with an open count of first-degree murder, second-degree murder, and voluntary manslaughter.

**{6}** In the course of trial proceedings, the district court considered the admissibility of the two items of evidence challenged here by Defendant: the lyrics to a rap song from a music video posted online by Defendant and Defendant's statements in a Facebook Live video which he posted. Defendant had moved for exclusion of the music video in a motion in limine. The district court's extensive discussion with parties' counsel included consideration of the relevance and unfair prejudice of both items of evidence, pursuant to Rule 11-403 NMRA. *See* Rule 11-403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.").

**{7}** Regarding the relevance of the music video, the State pointed to Defendant's references to riding a scooter, to shooting a person multiple times in the chest, and to putting someone or something "in a cooler," which the State argued was a reference to

killing someone. The State also argued that if the lyrics were written prior to the killing, as was subsequently confirmed, those lyrics were relevant as to Defendant's plan. Defendant argued the lyrics' relevance was speculative and multiple references therein were highly prejudicial. Finding the references in the song lyrics "ha[d] a nexus and a tie to the allegations in this case," the district court admitted a small portion of the song lyrics but only as read aloud by the lead detective in describing the course of his investigation.

{8}     Regarding the relevance of the Facebook Live post, the State pointed to Defendant's stating in his own words that he had left his bike out one night, his bike was stolen, and whoever stole the bike was scared to come outside with it, suggesting Defendant would take matters into his own hands. Defendant challenged the post's relevance as minimal and pointed to the multiple uses therein of the "N-word" as highly prejudicial. The court admitted a small portion of the Facebook Live post where Defendant discussed his stolen bicycle but ruled only its audio component could be played to the jury. The court found that redaction or reading aloud of the video's text would result in jury confusion.

{9}     Before the jury was selected, Defendant moved for a mistrial based on the State's earlier questioning during voir dire. Defendant argued the State's use of a campfire analogy improperly defined and lowered the beyond-a-reasonable-doubt standard for the jury. The State contended that it used the analogy—about what constitutes a "reasonable" step regarding fire safety—to define and explore *reasonable* and did not define or quantify the beyond-a-reasonable-doubt standard. The district court conditionally denied the motion as untimely, which untimeliness denied the court an opportunity to cure any error at its occurrence. In addition, the court found that the State's relevant questioning sought to elicit how prospective jurors defined *reasonable* but did not quantify or provide an example of the beyond-a-reasonable-doubt standard, and that any error would be corrected by UJI 14-5060 NMRA, which defines *reasonable doubt*. Subsequently, the district court affirmed its denial based on untimeliness and on the State "not providing a definition that was contrary to law or an example that would misstate the law," citing *State v. Montoya*, 2016-NMCA-098, 384 P.3d 1114.

{10}     During the hearing on jury instructions, Defendant submitted a proposed instruction on imperfect self-defense, citing *State v. Chavez*, 2022-NMCA-007, 504 P.3d 541. The district court denied the proposed instruction, ruling that instructing the jury on voluntary manslaughter and sufficient provocation would satisfy the requirements of *Chavez*. Ultimately, the jury was instructed on first-degree murder, second-degree murder, voluntary manslaughter, and self-defense, including first-aggressor doctrine.

{11}     The jury found Defendant guilty of first-degree murder, and Defendant moved for a new trial based on the denial of his submitted jury instruction on imperfect self-defense. The district court denied the motion, and Defendant timely appealed.

## II.    DISCUSSION

**{12}**    Defendant raises three claims for reversal. First, Defendant argues the district court committed reversible error in denying his proposed jury instruction regarding imperfect self-defense. Second, he argues the district court abused its discretion in admitting portions of the challenged rap lyrics and Facebook Live post into evidence. Third, he argues the district court abused its discretion in denying his motion for a mistrial based on the State's questioning during voir dire. We address Defendant's claims in turn.

## A.    The District Court Did Not Commit Reversible Error in Denying Defendant's Proposed Instruction Regarding Imperfect Self-Defense

**{13}**    Defendant argues denial of his submitted jury instruction on imperfect self-defense constituted reversible error and our precedent directing otherwise should be overruled. As we discuss, Defendant's position relies on the false premise that the jury instructions, without his submitted instruction expressly articulating the doctrine of imperfect self-defense, constituted an inadequate statement of law, resulting in "jury confusion."

**{14}**    "A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245 (internal quotation marks and citation omitted). "The trial court's rejection of [a] [d]efendant's submitted jury instruction is reviewed by this Court de novo, because it is closer to a determination of law than a determination of fact." *Id.* (second alteration in original) (internal quotation marks and citation omitted). We review an alleged error in the jury instructions "to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks omitted) (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176). "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.*

**{15}**    We note at the outset that Defendant, while citing *Benally* and *Cunningham*, offers no meaningful argument showing juror confusion or misdirection occurred because of an inaccurate rendition of the law. First, the parties do not contest that the jury was properly instructed regarding first-degree murder, second-degree murder, and voluntary manslaughter, including sufficient provocation. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 (presuming "that [uniform jury] instructions are correct statements of law").

**{16}**    Second, Defendant offers no binding authority supporting his argument that additional instruction on imperfect self-defense was required either to provide an accurate rendition of the law or to otherwise prevent juror confusion. As Defendant aptly cites, "New Mexico has long recognized" the theory of imperfect self-defense, i.e., "that 'heat of passion' includes fear for one's own safety that may result in an unreasonable

belief in the need to defend oneself." *State v. Abeyta*, 1995-NMSC-051, ¶ 15, 120 N.M. 233, 901 P.2d 164, *abrogated on other grounds by*, *State v. Campos*, 1996-NMSC-043, ¶ 32 n.4, 122 N.M. 148, 921 P.2d 1266. However, the *Abeyta* Court clearly rejected the proposition that a theory of imperfect self-defense warrants a jury instruction distinct from voluntary manslaughter:

> It is not unreasonable that the accused should be found guilty of voluntary manslaughter where the plea of self-defense fails. Although the unreasonable belief in the need for self-defense may well be termed imperfect self-defense, this label is somewhat misleading. Such conduct is not a true defense and does not justify the killing. Rather, the claim of imperfect self-defense simply presents an issue of mitigating circumstances that may reduce murder to manslaughter.

*Id.* ¶ 17 & n.4 (citation omitted) ("Since 1917 this 'imperfect' self-defense has been adequately covered under our jury instructions on manslaughter. We see no reason to change our jury instructions to accommodate a new phrase covering a legal concept that has long been a part of New Mexico law."). Significantly, we relevantly affirmed *Abeyta* in *State v. Henley*, 2010-NMSC-039, 148 N.M. 359, 237 P.3d 103, though *Henley* concerned the propriety of an *involuntary* manslaughter instruction: "We continue to adhere to our statement in *Abeyta* that 'where a defendant shoots someone in imperfect self-defense, the charge of murder can only be mitigated to voluntary manslaughter and an instruction on involuntary manslaughter is inappropriate.'" *Id.* ¶ 24 (quoting *Abeyta*, 1995-NMSC-051, ¶ 25). Accordingly, the district court was correct in recognizing that the voluntary manslaughter instruction suffices to instruct the jury regarding a valid claim of imperfect self-defense.

**{17}** Defendant further cites Justice Minzner's nonbinding concurrence-in-part, dissent-in-part in *State v. Jernigan*, 2006-NMSC-003, ¶ 34, 139 N.M. 1, 127 P.3d 537, in which Justice Minzner reasoned:

> If facts that support imperfect self-defense always justify an instruction on provocation, we at least need an instruction on provocation that fits the circumstances in which, based on evidence supporting an imperfect self-defense claim, the jury should receive a step-down instruction from attempted second-degree murder to attempted voluntary manslaughter.

However, apart from selectively quoting this passage, Defendant offers no analysis to demonstrate its relevance in this context. *See Dominguez v. State*, 2015-NMSC-014, ¶ 15, 348 P.3d 183 ("New Mexico courts will not review unclear arguments, or guess at what litigants' arguments might be." (text only) (citation omitted)).

**{18}** Instead, Defendant merely asserts that "[h]ere, those circumstances required a statement explaining that an unreasonable belief in the need to defend oneself is, as a matter of law, sufficient provocation for voluntary manslaughter." As our discussion of *Abeyta* makes clear, Defendant's premise is false: a voluntary manslaughter instruction

is not rendered an inadequate statement of law by the absence of an accompanying instruction on imperfect self-defense. Accordingly, Defendant's unsupported claims of jury confusion relying on that premise are without merit.

**{19}**     Consequently, the only remaining issue is whether Defendant carries his burden to show this Court should abandon its previous decisions rejecting an imperfect self-defense instruction. Citing *Padilla v. State Farm Mutual Automobile Insurance Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901, and *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305, Defendant implicitly claims two "compelling reason[s]" we should overrule our relevant precedent: (1) the current rules regarding self-defense jury instructions are "so unworkable as to be intolerable," and (2) "principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine." *Padilla*, 2003-NMSC-011, ¶ 7 (internal quotation marks and citation omitted) (providing categories of "compelling reason[s]" for overturning precedent). As we explain, however, Defendant's arguments provide only cursory support that does not avail.

**{20}**     For his first purported compelling reason—that our current instructional framework is unworkable—Defendant merely offers one paragraph highlighting UJI 14-5190 NMRA as evidence of the "complicated web" of our mandatory self-defense instructions and one paragraph baldly asserting that the absence of an imperfect self-defense instruction erroneously left "the jury's provocation instruction . . . completely disconnected from the self-defense analysis." Regarding the former paragraph, UJI 14-5190 concerns the duty to retreat, which is not at issue here; Defendant does not explain the relevance of that jury instruction, nor how an imperfect self-defense instruction would alleviate complications relating to our duty-to-retreat instruction. Regarding the latter paragraph, Defendant offers no authority to support his brief claim of error. In short, Defendant does not carry his burden to show our current instructional framework is unworkable under *Padilla*.

**{21}**     For his second purported compelling reason—that principles of law have critically changed—Defendant quotes cases, statutes, and jury instructions from thirteen states and the District of Columbia for the proposition those jurisdictions either allow a jury instruction for imperfect self-defense or characterize the doctrine as an affirmative defense. Without more, however, these examples merely show New Mexico does not view the theory of imperfect self-defense in the same light as do fourteen other jurisdictions. In other words, Defendant provides no analysis demonstrating that changes in the law have arisen to render the relevant principles in *Abeyta* "no more than a remnant of abandoned doctrine." *Trujillo*, 1998-NMSC-031, ¶ 34 (internal quotation marks and citation omitted) (parenthetically quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, *as recognized in*, *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450 (2008), for the proposition that "special circumstances to reverse precedent might include 'subsequent changes or development in the law' or showing that the precedent has become a 'detriment to coherence and consistency in the law'").

**{22}** Otherwise, Defendant relies here on *Chavez*, 2022-NMCA-007, ¶ 25, for its recent recognition of imperfect self-defense doctrine. However, that case is unavailing, as the *Chavez* Court discussed imperfect self-defense to explain the defendant's valid claim to a *voluntary manslaughter* instruction which had been denied by the district court. *Id.* ¶¶ 25-26 ("[I]mperfect self-defense mitigates a homicide so that the crime is voluntary manslaughter rather than murder." (citing *Abeyta*, 1995-NMSC-051, ¶¶ 14-17)). Accordingly, *Chavez* does not support Defendant's argument that denial of an imperfect self-defense instruction reflects a musty doctrinal relic we must abandon. To the contrary, *Chavez* supports the district court's determination that the voluntary manslaughter instruction in this case "instruct[ed] the jury upon all questions of law essential for a conviction" under an imperfect self-defense theory. *Ellis*, 2008-NMSC-032, ¶ 14.

**{23}** In sum, Defendant has not shown either that the district court erred in denying his proposed instruction or that our precedent in this area must be overruled. Consequently, we affirm the district court on this issue.

## B. The District Court Did Not Abuse Its Discretion in Admitting into Evidence Portions of Defendant's Published Rap Lyrics and Facebook Live Post

**{24}** Next, Defendant argues the district court abused its discretion in admitting into evidence the challenged portions of Defendant's published rap lyrics and Facebook Live post. Defendant argues that the admitted rap lyrics were not relevant and were unfairly prejudicial and that the admitted Facebook Live audio had only "minimal probative value" that was outweighed by being unfairly prejudicial.

**{25}** "We review the district court's decision to admit or exclude evidence for an abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420 (internal quotation marks and citation omitted). Where a court "applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law," it abuses its discretion. *State v. Adams*, 2022-NMSC-008, ¶ 35, 503 P.3d 1130 (internal quotation marks and citation omitted).

**{26}** Defendant implicitly argues under the balancing test in Rule 11-403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." In *State v. Bailey*, 2017-NMSC-001, ¶ 16, 386 P.3d 1007, we said:

> Unfair prejudice, in the context of Rule 11-403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Evidence is unfairly prejudicial if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason. The determination of unfair prejudice is fact sensitive, and,

accordingly, much leeway is given trial judges who must fairly weigh probative value against probable dangers. Rule 11-403 does not guard against any prejudice whatsoever, but only against unfair prejudice. However, we will not simply rubber stamp the trial court's determination.

(Text only) (citations omitted).

### 1. Defendant does not show the district court abused its discretion in admitting a portion of Defendant's published rap lyrics

**{27}**    Regarding relevance, Defendant merely argues the admitted "lyrics are not relevant because they were written and publicly published before the shooting." Here, Defendant appears to rely on refuting the State's initial theory that the lyrics were written *after* the shooting and therefore confessional in nature. However, the record reflects the State's alternative theory that the lyrics, if written *before* the shooting, relevantly reflect a plan to exact revenge on whoever stole Defendant's bicycle. Contrary to Defendant's assertion, the district court did not allow this "evidence on the assumption it was confessional"; rather, the court stated in its oral ruling the admitted lyrics "are indicative statements by a party opponent of intent and intent that's specific to this case." Accordingly, Defendant's brief argument against relevance does not avail.

**{28}**    Regarding unfair prejudice, Defendant asserts that "injecting rap lyrics and the hip hop culture into the trial was highly inflammatory." Defendant cites persuasive and secondary sources supporting that such evidence "can have a powerful prejudicial effect on jurors who, despite their efforts, may 'become more disposed to and confident in a guilty verdict what with the added weight of the negative personality trait associations conjured up by . . . inflammatory lyrics.'" *United States v. Bey*, No. CR 16-290, 2017 WL 1547006, at *7 n.3 (E.D. Pa. Apr. 28, 2017) (omission in original) (quoting Stuart P. Fischoff, Gangsta' Rap and a Murder in Bakersfield, 29 J. Applied Soc. Psych. 795, 797 (1999)).

**{29}**    Without more, however, the possibility of prejudice raised by Defendant does not constitute unfair prejudice that substantially outweighs the probative value of the evidence as found by the district court. Stated differently, Defendant does not show the brief portion of admitted lyrics reflecting an intent for revenge for theft of a bicycle is "best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Bailey*, 2017-NMSC-001, ¶ 16. In addition, we recognize the relevance of the State's argument that Defendant wrote the lyrics prior to the killing but then, as he acknowledged on cross-examination, elected to post the music video containing those lyrics to social media on two occasions *after* the killing. Whatever prejudice accompanies the admitted statements is rendered less unfair, if unfair at all, by Defendant's deliberate decision to publish such relevant statements in the weeks following the homicide. *See id.* ¶ 26 ("[T]he task under Rule 11-403 is not to exclude all uniquely prejudicial evidence—just that evidence having an unduly prejudicial impact on a defendant that far outweighs the evidence's probative effect in proving an element of the [s]tate's case.").

**{30}** In the context of the district court's extensive discussion and consideration of this issue, which Defendant concedes, Defendant's arguments here fall well short of demonstrating the court's "ruling is clearly against the logic and effect of the facts and circumstances of the case." *Smith*, 2016-NMSC-007, ¶ 27. In sum, Defendant does not show the district court abused its discretion in admitting the relevant portion of the rap lyrics to be read aloud by the lead detective.

**2.      Defendant does not show the district court abused its discretion in admitting an audio portion of Defendant's Facebook Live post**

**{31}** Defendant concedes his Facebook Live post had "some minimal probative value" because, in the post, he stated that his bicycle was stolen and that "nobody in his neighborhood would have stolen the bike because they are all scared of him." Thus, Defendant's claim of abuse of discretion here relies on the admitted audio portion of the post being unfairly prejudicial because it included four instances of the N-word.

**{32}** Importantly, Defendant does not acknowledge the district court's careful consideration of the issues here, including the negative power of the term; its use by Defendant in the admitted portion "interchangeably to refer to various individuals," including himself; its colloquial use by Defendant rather than use as a racial epithet, the redaction of which could "creat[e] more [jury] prejudice rather than less"; and the district court nonetheless offering to defense counsel the option of further redaction. The record reflects the district court appropriately weighed these prejudicial issues against the probative value of the evidence. The court also reasoned that Defendant used the term to refer to up to three individuals and that the jury would have to make a finding of fact to determine Defendant's intent toward one of those individuals, namely Decedent. Because intent was at issue, the record refutes Defendant's claim that the use of the word within the context of the Facebook Live post was "unrelated to any disputed issue in the case."

**{33}** Under these considerations, Defendant fails to show that the district court abused its discretion in admitting the audio portion of the Facebook Live post into evidence.

**{34}** Finally, we note the State's argument under *State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110, that Defendant's briefing challenging the admission of the rap lyrics and the Facebook Live post are devoid of requisite argument that the alleged errors were not harmless. *See id.* ¶ 25 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful."). Because our holding that the district court did not abuse its discretion in admitting the lyrics and the Facebook Live post resolves the evidentiary issues here, we need not address this question further. Nonetheless, we note and correct Defendant's position in the reply brief, in which he quotes *Tollardo* for his proposition that "[i]t is well-settled that 'the State bears the burden of proving that the error is harmless.'" *See id.* We highlight that, as *Tollardo* makes clear, the State bears this burden where (1) error has been established and (2) that error is constitutional in nature. *Id.* Thus, in a case such as this, where the alleged error is not constitutional error, *Tollardo* is inapposite.

**C.    The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a Mistrial**

**{35}**    Finally, Defendant argues the district court abused its discretion in denying his motion for a mistrial based on the State's questioning during the course of jury selection. *See State v. Johnson*, 2010-NMSC-016, ¶ 49, 148 N.M. 50, 229 P.3d 523 ("A denial of a motion for mistrial is reviewed under an abuse of discretion standard."). Defendant challenges the district court's ruling that his objection was untimely, arguing his objection was properly raised prior to the jury being selected and before any testimony. Otherwise, Defendant focuses on the impropriety of counsel defining the beyond-a-reasonable-doubt standard, arguing that "an erroneous instruction about the state's burden of proof is always prejudicial error." Citing *State v. Astorga*, 2016-NMCA-015, ¶ 15, 365 P.3d 53, Defendant asserts that jury selection being a "critical stage" of trial brings the State's questioning here within the scope of *Montoya*. *See Montoya*, 2016-NMCA-098, ¶ 16 ("[T]he district court did not abuse its discretion in prohibiting defense counsel [during closing argument] from deviating from the definition of 'reasonable doubt' contained in UJI 14-5060.").

**{36}**    Applying our standard for abuse of discretion provided above, Defendant here bears the burden to show the district court's denial of his motion for a mistrial "is clearly against the logic and effect of the facts and circumstances of the case," *Smith*, 2016-NMSC-007, ¶ 27 (internal quotation marks and citation omitted), because the court either "applie[d] an incorrect standard[ or] incorrect substantive law, or [because] its discretionary decision [was] premised on a misapprehension of the law," *Adams*, 2022-NMSC-008, ¶ 35 (internal quotation marks and citation omitted).

**{37}**    Defendant's arguments do not establish that the district court abused its discretion in finding his objection untimely or in finding the State's relevant questioning did not improperly define the beyond-a-reasonable-doubt standard.

**{38}**    As to timeliness, the district court's discussion of its ultimate ruling makes clear that Defendant's objection did not allow the district court an opportunity to cure the alleged error. In affirming its initial denial of the motion for a mistrial, the district court recognized that some juror confusion may have occurred in the State's transition from discussing *reasonable doubt* to its ensuing questioning defining *reasonable*. The district court concluded that "perhaps the segue may have been somewhat confusing" but found the State's ensuing discussion then "went into what do you think is reasonable, separate and apart from what is reasonable doubt." In opining that it "would have likely sustained that objection at the time," the district court articulated its determination that the State's possible impropriety lay in the transition from one topic to the next, not in the second topic—use of the campfire analogy to define *reasonable*—being improper.

**{39}**    As to the content of the State's challenged questioning, the record supports the district court's determination regarding the State's questioning of the venire panel. Subsequent to citing its beyond-a-reasonable-doubt burden, the State's relevant questioning concerned reasonable precautions needed "to make a campfire safe." The State elicited responses from the potential jurors reflecting reasonableness, such as

"having the right supplies . . . fire pit . . . water . . . shovels," before reflecting unreasonableness by asking if the campfire should be built "under a tree" and if having the Albuquerque Fire Department on site would be "a reasonable step."

**{40}** Under the district court's determination, a timely objection would have occurred during the State's questioning to allow the court to cure any confusion caused by the State's transition from discussing the beyond-a-reasonable-doubt standard to questioning as to reasonableness. Instead, Defendant raised his objection more than an hour later, thereby not providing an opportunity for the district court to cure the alleged error. Defendant makes no argument that the alleged error could still have been cured at the time he raised the objection.

**{41}** Critically, Defendant's arguments on the merits of his objection do not challenge the district court's determination that the State's questioning under the campfire analogy concerned *reasonable* rather than *beyond a reasonable doubt*. Instead, Defendant's brief in chief focuses solely on the impropriety of counsel ever defining the beyond-a-reasonable-doubt standard in deviation from UJI 14-5060, a proposition which is undeniable but not at issue. By not challenging the district court's view of the State's relevant questioning, Defendant has left unchallenged the district court's ruling under *Montoya* that the State did "not provid[e] a definition that was contrary to law or an example that would misstate the law." Defendant addresses this view for the first time in his reply brief, asserting that "the discussion of reasonableness in criminal trials is connected only to reasonable doubt[, a]nd there is no doubt that the prosecutor was asking about reasonable doubt." The district court's determination belies this assertion, and Defendant does not advance further argument demonstrating that the district court's determination and ruling constitute an abuse of discretion.

**{42}** In short, Defendant's arguments do not show that the district court's denial of his motion for a mistrial was "clearly against the logic and effect of the facts and circumstances of the case." *Smith*, 2016-NMSC-007, ¶ 27. Accordingly, we hold the district court did not abuse its discretion by that denial.

**{1}** **CONCLUSION**

**{43}** For the foregoing reasons, Defendant's conviction is affirmed.

**{44}** **IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**