Certiorari Granted, June 8, 2011, No. 33,011
Certiorari Granted, June 8, 2011, No. 33,013

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-062

Filing Date: April 8, 2011

Docket No. 30,142 consolidated with No. 29,702

ANDREA J. FELTS, on behalf of
herself and all others similarly
situated,

       Plaintiff-Appellee,

v.

CLK MANAGEMENT, INC. f/k/a
BAT SERVICES, INC. and CASH
ADVANCE NETWORK, INC.,

       Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge

Feferman Warren & Treinen, P.A.
Rob Treinen
Albuquerque, NM

Schaefer Law Firm, L.L.C.
Richard J. Fuller
Douglas L. Micko
Minneapolis, MN

Public Justice, P.C.
F. Paul Bland, Jr.
Amy Radon
Washington, D.C.

for Appellee

1

Fredericks Peebles & Morgan LLP
Conly J. Schulte
Joseph V. Messineo
Omaha, NE

Fredericks Peebles & Morgan LLP
Frances C. Bassett
Louisville, CO

for Appellant CLK Management, Inc.
f/k/a Bat Services, Inc.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer G. Anderson
Emil J. Kiehne
Albuquerque, NM

Weir & Partners, LLP
Susan Verbonitz
Philadelphia, PA

for Appellant Cash Advance Network, Inc.

Gary K. King, Attorney General
Karen J. Myers, Assistant Attorney General
Santa Fe, NM

for Amicus Curiae

## OPINION

**FRY, Judge.**

**{1}** The opinion filed in this case on March 2, 2011, is hereby withdrawn, and the following opinion is filed in its place. The motions for rehearing filed by Defendants are denied.

**{2}** In this consolidated case, Defendants CLK Management, Inc. (CLK) and Cash Advance Network, Inc. (CANI) (collectively, Defendants) appeal the district court's denial of their respective motions to compel arbitration and to stay proceedings pursuant to a binding arbitration provision located within three payday-type loan agreements that Plaintiff Andrea J. Felts entered into with Defendants over the Internet. Defendants moved to compel arbitration in response to a putative class action lawsuit filed by Felts in district court, in which she alleged that Defendants' payday lending enterprises are engaged in online lending

practices in direct violation of a number of New Mexico laws. The district court declined to order the parties to arbitrate their dispute after agreeing with Felts that the arbitration provision in the loan agreements was unconscionable under New Mexico law.

**{3}** We conclude that the district court correctly determined that: (1) the threshold question of arbitrability was for the court, and not an arbitrator, to decide; (2) the class action ban in the arbitration provision was unconscionable and in the same vein as the class action waiver invalidated by our Supreme Court in *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, 144 N.M. 464, 188 P.3d 1215; and (3) the class action ban could not be severed from the remainder of the arbitration provision and, therefore, the entire arbitration provision was unenforceable. Accordingly, we affirm the district court's orders denying each Defendant's motion to compel arbitration.

## BACKGROUND

### 1. Terms of Loan Agreements and Binding Arbitration Provision

**{4}** This case stems from three different online loan transactions that Felts entered into with various Internet-based payday lending companies, including Defendants, in which she received immediate electronic deposits of cash into her bank account in exchange for a series of post-dated automatic withdrawals from the account to be applied toward repayment of the loan principal amounts plus interest and/or finance charges. For each separate transaction, she electronically signed a "Loan Note and Disclosure" (Loan Agreement), which was virtually identical across all three transactions and which included two provisions regarding arbitration—an "Agreement to Arbitrate All Disputes" (arbitration provision) and an "Agreement Not to Bring, Join or Participate in Class Actions" (class action waiver provision). Given the similarity of these two provisions across all three Loan Agreements, we rely on the language from Felts' Loan Agreement with "MTE Financial Services, Inc. d/b/a Cash Advance Network" for purposes of this appeal.[1]

**{5}** Under that particular Loan Agreement, the arbitration provision provided that "any and all claims, disputes or controversies [between the borrower and lender] shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ('NAF')." Featured prominently in all capital letters within the arbitration provision was a clause directing that the claims subject to arbitration could not

---

[1]We note that two of the Loan Agreements contained identical arbitration provisions. The third Agreement, a loan issued by Ameriloan, differed slightly in its language and organization. The most notable difference is that in addition to the all-caps sentence prohibiting class-based arbitration seen in the other two Loan Agreements, the Ameriloan agreement included the following: "No class arbitration. All disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you." However, these differences are not material to our discussion as the substantive nature of the Ameriloan Agreement is virtually identical to that of the other two Loan Agreements.

3

be arbitrated on a class-wide basis: "THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION" (hereinafter "class action ban"). The arbitration provision also provided, in relevant part, that: (1) the arbitration was to be governed by "the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to -16 (2006)"; and (2) both the borrower and lender waived their "right or opportunity to litigate disputes through a court and have a judge or jury decide the disputes [and] agreed instead to resolve disputes through binding arbitration." The second provision of the Loan Agreement, the class action waiver, directed that "[t]o the extent permitted by law, [the borrower] will not bring, join or participate in any class action as to any claim, dispute or controversy [the borrower] may have against [the lender]." Toward that end, it permitted the lender to seek injunctive relief to end the lawsuit or to remove the borrower as a participant in the class action lawsuit, with the borrower being held responsible for the lender's court costs and attorney fees.

{6}     Thus, under the terms of the three Loan Agreements, Felts was precluded from seeking or participating in any type of class-wide action, whether it was in arbitration or in a judicial setting—which, for that matter, was not allowed in any event. We assume without deciding, for the purpose of our analysis, that Felts assented to the terms of the Loan Agreements when she electronically signed and submitted the forms online.

2.     **Procedural History**

{7}     On December 15, 2008, Felts filed a putative class action complaint against CLK and other payday lenders purportedly responsible for originating and/or servicing her loans, in which she claimed violations of the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009), the New Mexico Small Loans Act (SLA), NMSA 1978, §§ 58-15-1 to -39 (1955, as amended through 2007), and sought equitable relief for unjust enrichment and disgorgement of profits, as well as injunctive relief on behalf of herself and other New Mexico residents who had obtained loans under $2,500 from Defendants. She later amended the complaint to include CANI as a Defendant. We note that Felts' complaints did not make any arguments regarding the validity of the arbitration provision—in fact, the amended complaint included only a one-line statement that the Loan Agreements contained an arbitration provision. Rather, her amended complaint focused on challenging the validity of the Loan Agreements as a whole.

{8}     CLK filed its motion to compel arbitration and to stay trial proceedings pursuant to the FAA, 9 U.S.C. Section 3, and NMSA 1978, Section 44-7A-8 (2001). CLK argued that, under the arbitration provision of the Loan Agreements, Felts was required to individually arbitrate her claims and was precluded from seeking class-wide relief. CLK also alleged that because Felts had not challenged the validity of the arbitration provision in her complaint, the district court could not consider any such challenges and was instead required to refer the entire matter to arbitration. Felts opposed CLK's motion, arguing that the arbitration provision was unconscionable and therefore unenforceable pursuant to section 2 of the FAA, which permits a court to refuse to enforce an arbitration agreement based on "generally

4

applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Specifically relying on our Supreme Court's rationale in *Fiser*, Felts argued that the class action ban in the arbitration provision amounted to an exculpatory clause for CLK and therefore rendered the entire arbitration provision substantively unconscionable and unenforceable under New Mexico law.

**{9}** After a hearing on CLK's motion, the district court declined to order the parties to arbitrate their disputes. After concluding that it had jurisdiction to decide the validity of the arbitration agreement, the district court found that Felts' claims constituted "small consumer claims within the meaning of *Fiser*" and "[a]s such, [the] prohibitions against class relief [in the arbitration provisions were] contrary to New Mexico's fundamental public policy of encouraging the resolution of small consumer claims." On this basis, the district court declared the entire arbitration provision unenforceable and denied CLK's motion to compel in its entirety.

**{10}** After it had been added as a Defendant, CANI also filed a motion to compel arbitration and to stay trial proceedings. CANI alleged that the district court lacked jurisdiction to decide the validity of the arbitration provision under existing United States Supreme Court precedent, that Felts was required to arbitrate all of her disputes under the terms of the arbitration provision, and that the district court could sever the unconscionable class action ban and enforce the remainder of the arbitration provision. Felts opposed this motion as well, arguing that: (1) CANI had failed to rebut the evidence she had raised regarding the exculpatory nature of the class action ban in the arbitration provision, (2) the arbitration provision was unenforceable on grounds of impossibility because the NAF—the arbitral forum selected by Defendants under the arbitration provision—was prohibited from arbitrating the parties' disputes under the terms of a national consent decree it had signed in another lawsuit, and (3) the class action ban was not severable from the rest of the arbitration provision under *Fiser*.

**{11}** Without hearing oral argument on CANI's motion, the district court again declined to order arbitration. The district court's order on CANI's motion was virtually identical to its earlier order denying CLK's similar motion to compel, with the exception of an additional finding that "the class action ban is not severable from the CANI arbitration provision."

**{12}** CLK and CANI separately appealed the district court's orders denying their respective motions to compel arbitration. The appeals were later consolidated for our review, and we also allowed the New Mexico Attorney General to submit an amicus brief in support of Felts.

**DISCUSSION**

**{13}** On appeal, Defendants raise the following three primary arguments: (1) the district court erroneously determined that it had jurisdiction to decide the parties' disputes regarding the validity of the arbitration provision, rather than referring the matter to an arbitrator; (2) *Fiser* does not apply to the facts of this case, and even if it did, the arbitration provision is not unconscionable because Felts has a meaningful remedy available to her through

5

arbitration; and (3) the district court incorrectly determined that the class action ban could not be severed from the remainder of the arbitration provision. Defendants also refer us to recent precedent from the United States Supreme Court, *Rent-A-Center, W., Inc. v. Jackson*, ____ U.S. ____, 130 S. Ct. 2772 (2010), which was decided after the district court declined to compel arbitration in this case, and which Defendants argue mandates reversal of the district court's orders. We address each of these arguments in turn.

**{14}** We apply a de novo standard of review to the issues raised in this appeal. We review de novo a district court's order denying a motion to compel arbitration. *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. Similarly, "whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Id.* (internal quotation marks and citation omitted). Finally, whether a contract is unconscionable is a matter of law, and we therefore also apply de novo review to the district court's determination in this case that the class action ban rendered the arbitration provision unconscionable and unenforceable. *Fiser*, 2008-NMSC-046, ¶ 19.

## 1.     Arbitrability

**{15}** We first address whether the district court correctly determined that it, and not an arbitrator, had jurisdiction to decide the issue of arbitrability—that is, to decide the parties' disputes regarding the validity of the arbitration provision rather than referring this gateway issue to an arbitrator. Defendants essentially argue that under the terms of the arbitration provision, an arbitrator should have determined whether the arbitration provision was unconscionable and therefore unenforceable due to its inclusion of a class action ban.

### a.     Federal Framework

**{16}** We begin by reviewing the applicable federal law on arbitrability because our analysis turns on recent precedent from the United States Supreme Court on this particular issue. Under the FAA, which the parties agree governs the arbitration provision at issue here, it is well established that "arbitration is a matter of contract." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Section 2 of the FAA specifically provides that arbitration provisions in written agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, because arbitration provisions are treated like other contracts, they can be invalidated and held unenforceable under "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs.*, 517 U.S. at 687; *see Fiser*, 2008-NMSC-046, ¶ 23. This principle is entrenched in New Mexico jurisprudence as well. *Id.* ¶¶ 22, 23.

6

**{17}** In this case, we are concerned with the question of *who* decides—a district court or an arbitrator—whether an arbitration provision in a written agreement is invalid on grounds of unconscionability. The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is clear and unmistakable evidence that the parties decided otherwise under the terms of their arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). To explain more fully, although the FAA has limited the role of courts in the arbitration context, certain gateway issues involving arbitration provisions have remained within the purview of judicial review. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) ("In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter[] in the absence of clear and unmistakable evidence to the contrary[.]" (alterations omitted) (internal quotation marks and citation omitted)). These gateway questions of arbitrability "typically involve matters of a kind that contracting parties would likely have expected a court to decide[,]" such as the validity of an arbitration provision, the scope of an arbitration provision, or whether an arbitration agreement covers a particular controversy. *Id.* (internal quotation marks and citation omitted); *see Howsam*, 537 U.S. at 84.

**{18}** However, courts have recognized an important exception to the general rule that questions of arbitrability are typically for the courts to decide. Reflecting the principle that arbitration is a contractual undertaking, courts have recognized that parties can agree to have an arbitrator, rather than a court, decide gateway questions of arbitrability in addition to deciding the parties' underlying claims. *See Rent-A-Center*, 130 S. Ct. at 2777 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question [of] 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (citation omitted)). In *Rent-A-Center,* decided in June 2010, the Supreme Court referred to this type of agreement between parties as a delegation provision, i.e., "an agreement [between the parties] to arbitrate threshold issues concerning the arbitration agreement [rather than having a court decide]." 130 S. Ct. at 2777. As the Supreme Court explained in *Rent-A-Center*, a delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 2777-78. In referring questions of arbitrability to an arbitrator through the enforcement of a delegation provision, courts must, however, ensure that there is "clear and unmistakable evidence" that the parties agreed to arbitrate questions of arbitrability. *First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (alterations omitted) (internal quotation marks and citation omitted)); *AT&T Techs.*, 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). We also note that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.

7

**{19}**     Within this framework, we turn to the mechanism for determining whether a party has challenged an arbitration agreement, and specifically a delegation provision, in a manner such that a court can decide the challenge in the first instance.  In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006), the Supreme Court established that challenges to the validity of arbitration provisions fall within two categories: (1) those "challeng[ing] specifically the validity of the agreement to arbitrate"; and (2) those "challeng[ing] the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  The Court held that only the first type of challenge is for a court to decide.  *Id.* at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").  The Court noted that the class in *Buckeye* had not specifically challenged the validity of the arbitration provision in certain loan agreements that the individual class members had entered into with the lender.  *Id.* at 446.  Rather, "[t]he crux of the[ir] complaint [was] that the contract as a whole (including its arbitration provision) [was] rendered invalid by [a] usurious finance charge."  *Id.* at 444.  Accordingly, the Court held that the arbitration provision was itself enforceable and the challenge to the validity of the entire contract was therefore a matter to be decided by an arbitrator and not a court.  *Id.* at 446 ("[W]e conclude that because [the] respondents challenge the [a]greement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract.  The challenge should therefore be considered by an arbitrator, not a court.").  The Court's decision to enforce the arbitration provision essentially established a rule of severability because the Court determined that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  *Id.* at 445.

**{20}**     In circumstances where parties have decided to arbitrate arbitrability—that is, where there is a delegation provision assigning questions of arbitrability to an arbitrator—the Supreme Court's recent holding in *Rent-A-Center* appears to stand for the proposition that a party must specifically challenge the delegation provision in order for a court to consider the challenge rather than referring the matter to an arbitrator.  130 S. Ct. at 2779.  *Rent-A-Center* involved an employment discrimination lawsuit in which the employer moved to compel arbitration under the terms of an arbitration agreement signed by the employee.  *Id.* at 2775, 2777.  The arbitration agreement contained a delegation provision that "gave the arbitrator exclusive authority to resolve any dispute relating to the . . . enforceability . . . of th[e] [a]greement."  *Id.* at 2779 (omissions in original) (internal quotation marks and citation omitted).  At issue before the Supreme Court was whether the district court could consider the employee's contention that the arbitration agreement was unconscionable in light of this delegation provision which "explicitly assign[ed] that decision to the arbitrator."  *Id.* at 2775.  The Court held that the employee was required to have specifically challenged the delegation provision in order for the district court to be able to consider the unconscionability claim rather than submit the matter to an arbitrator.  *Id.* at 2779 ("[U]nless [the employee] challenged the delegation provision specifically, we must treat it as valid under [section] 2 [of the FAA], and must enforce it under [sections] 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator.").  The Court concluded that because the employee had not specifically challenged the delegation provision during the course of the litigation, his claim that the entire arbitration agreement was unconscionable

8

could only be decided by an arbitrator. *Id.* at 2779-81. Thus, *Rent-A-Center* appears to establish that in cases where a delegation provision granting an arbitrator the authority to determine the validity of an arbitration agreement exists, a district court is precluded from deciding a party's claim of unconscionability unless that claim is based on the alleged unconscionability of the delegation provision itself. *Id.*; *see id.* at 2781 (Stevens, J., dissenting) (stating that the majority had adopted a rule that "[e]ven when a litigant has specifically challenged the validity of an agreement to arbitrate[,] he must submit that challenge *to the arbitrator* unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator—the so-called 'delegation clause'"). With this framework in mind, we turn to the parties' specific arguments regarding arbitrability in this case.

**b.      There Is Clear and Unmistakable Evidence That the Parties Intended to Delegate Questions of Arbitrability to an Arbitrator under the Terms of the Arbitration Provision**

{21}      Initially, the parties dispute whether the arbitration provision in the Loan Agreements included clear and unmistakable evidence of a delegation clause requiring that questions of arbitrability regarding the validity of the arbitration provision be submitted to an arbitrator. Defendants argue that a clear and unmistakable delegation clause was included in the first sentence of the arbitration provision.

> **AGREEMENT TO ARBITRATE *ALL DISPUTES***:  By signing below . . . , you and we agree that *any and all claims, disputes or controversies* that we or our servicers or agents have against you or that you have against us . . . *that arise out of* your application for one or more loans, the Loan Agreements that govern your repayment obligations, the loan for which you are applying or any other loan we previously made or later make to you, *this Agreement to Arbitrate All Disputes*, collection of the loan or loans, or alleging fraud or misrepresentation, whether under the common law or pursuant to federal or state statute or regulation, or otherwise, *including disputes as to the matters subject to arbitration, shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed*.

(Emphasis added.)   Specifically, Defendants contend that the delegation clause in this sentence is the language requiring arbitration of "any and all claims, disputes or controversies . . . aris[ing] out of . . . this Agreement to Arbitrate All Disputes . . . including disputes as to the matters subject to arbitration." Additionally, CANI argues that the parties clearly and unmistakably intended to arbitrate questions of arbitrability by incorporating the rules of the NAF into the arbitration provision. The NAF Code of Procedure expressly provides that an arbitrator has the authority to decide jurisdictional issues, including arbitrability questions regarding the existence, validity, and scope of an arbitration provision.

9

NAF Code of Procedure, pt. IV, r. 20(F), at 28 (Aug. 1, 2008) (http://www.adrforum.com/main.aspx).[2]

**{22}**    As we stated previously, applicable federal law provides that courts should apply state law principles in deciding whether the parties to an arbitration agreement clearly and unmistakably agreed to submit questions of arbitrability to an arbitrator. *See First Options*, 514 U.S. at 944. Under New Mexico law, arbitration agreements are governed by well-established contract law principles. *See Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982); *Santa Fe Techs, Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 52, 131 N.M. 772, 42 P.3d 1221. Our Supreme Court has stated that "[c]ourts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement." *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65. Additionally, in examining the plain language of an arbitration agreement, this Court has previously stated that arbitration clauses drafted with broad strokes require broad interpretation. *Santa Fe Techs.*, 2002-NMCA-030, ¶ 55. Likewise, our Supreme Court has stated that "[w]hen the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters." *McMillan*, 2004-NMSC-002, ¶ 10 (internal quotation marks and citation omitted).

**{23}**    In this case, we hold that the plain language of the arbitration provision clearly and unmistakably evidences the parties' intent to have an arbitrator decide threshold issues of arbitrability. The terms of the arbitration provision and, specifically, the first sentence of the provision, unambiguously provide that all disputes were to be submitted to an arbitrator. In particular, we refer to the title of the arbitration provision, "Agreement to Arbitrate *All Disputes*," as well as the language in the provision itself stating that the parties submit to arbitration "*any and all claims, disputes or controversies* . . . aris[ing] out of . . . this Agreement to Arbitrate All Disputes . . . *including disputes as to the matters subject to arbitration*." (Emphasis added.) We view this italicized language to be clear and unmistakable evidence to the effect that the parties agreed to arbitrate all issues, including issues of arbitrability. Additionally, given the lack of any sort of limiting language, we interpret this sweeping language broadly and conclude that the parties expressly intended to arbitrate "all disputes"—including arbitrability issues such as the validity of the arbitration provision.

**{24}**    Moreover, we agree with Defendants that the incorporation of the NAF Code of Procedure constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues. Rule 20 of the NAF Code of Procedure expressly gives the arbitrator the

---

[2]Rule 20 of the NAF Code of Procedure provides: "An Arbitrator shall have the power to rule on all issues, [c]laims, [r]esponses, questions of arbitrability, and objections regarding the existence, scope, and validity of the [a]rbitration [a]greement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement."

10

authority to decide issues of arbitrability. Although New Mexico courts have not yet directly addressed whether incorporation of an arbitral forum's rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability, a number of federal courts of appeal that have reached this issue have held that it is. *See, e.g.*, *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009) (holding that the act of incorporating the American Arbitration Association (AAA) rules provides "clearer evidence of the parties' intent to leave the question of arbitrability to the arbitrator . . . because Rule 7(a) expressly gives the arbitrator the power to rule on his or her own jurisdiction" and concluding that "the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator" (internal quotation marks omitted); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (stating that "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331-32 (11th Cir. 2005) (determining that an arbitration agreement's incorporation of arbitral forum rules, which specifically included a rule that the arbitrator shall have the power to decide issues of arbitrability, was clear and unmistakable evidence that the parties delegated arbitrability issues to an arbitrator); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the [International Chamber of Commerce] . . ., [the plaintiff] agreed to be bound by [specific articles]. These provisions clearly and unmistakably allow[ed] the arbitrator to determine her own jurisdiction when . . . there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned."); *cf. P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) ("A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract. By agreeing to arbitrate before the AAA, [the parties] impliedly agreed that they would be bound . . . by the procedural rules of the AAA, including Rule 47(c) [which states that the parties consent to judicial confirmation of the disputed arbitration award].").

**{25}**     We also note that previous New Mexico cases have incorporated and given effect to the plain meaning of referenced rules in contractual agreements. *See Christmas*, 98 N.M. at 332, 648 P.2d at 790 (incorporating and giving effect to a specific article of a realtors' code of ethics, where the parties were both members of the same realtors association and had agreed to submit disputes to arbitration "in accordance with the regulations of their board" (internal quotation marks and citation omitted)); *see also Monette v. Tinsley*, 1999-NMCA-040, ¶¶ 15-17, 126 N.M. 748, 975 P.2d 361 (determining that an arbitration agreement's language that the parties were bound to arbitrate in accordance with the Commercial Arbitration Rules of the American Arbitration Forum indicated that these rules were considered the "guiding substantive and procedural rules for the arbitration"). In light of this overwhelming authority giving effect to rules referenced in contracts and specifically arbitration agreements, we conclude that the reference to the NAF Code of Procedure in the arbitration provision is further evidence that the parties clearly and unmistakably delegated arbitrability questions to an arbitrator.

11

**{26}** Given the plain language of the arbitration provision and its incorporation of the NAF Code of Procedure, we hold that the parties in this case clearly and unmistakably delegated arbitrability questions to an arbitrator. For purposes of resolving the remaining issues in this appeal, we consider the delegation clause to be the following language in the first sentence of the arbitration provision in the parties' Loan Agreement:

> you and we agree that any and all claims, disputes or controversies that we or our servicers or agents have against you or that you have against us . . . that arise out of . . . this Agreement to Arbitrate All Disputes, . . . including disputes as to the matters subject to arbitration, shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the [NAF] in effect at the time the claim is filed.

**c.    Felts Properly Challenged the Delegation Clause and, Therefore, the District Court Had Jurisdiction to Decide the Issue of Unconscionability**

**{27}** We next address Defendants' contention that because Felts did not specifically challenge the validity of the delegation clause in her amended complaint, the district court was precluded from deciding her claim that the arbitration provision was unconscionable due to the class action ban. Defendants argue that under the Supreme Court's decisions in *Rent-A-Center* and *Buckeye*, the district court had no option but to submit the unconscionability issue to an arbitrator along with Felts' underlying claims.

**{28}** As we noted earlier, Felts' amended complaint focused primarily on challenging the legality of the Loan Agreements under New Mexico law. As the district court acknowledged at the hearing on CLK's motion to compel arbitration, Felts' complaint did not contain a specific challenge to the arbitration provision. It was only after CLK and CANI filed their respective motions to compel arbitration that Felts raised any specific challenges to the validity of the provision, arguing that the class action ban rendered the arbitration provision unconscionable and also that it was impossible to compel arbitration because the agreed-upon arbitral forum, the NAF, was precluded from handling consumer disputes. Defendants maintain that Felts' failure to challenge the arbitration provision in her complaint is similar to *Buckeye*, where the Supreme Court determined that because the "crux of the complaint" challenged the contract as a whole and not the arbitration provision specifically, the validity of the provision was for an arbitrator to decide. *See Buckeye*, 546 U.S. at 444, 446 ("[B]ecause respondents challenge the [a]greement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."). They further contend that under *Rent-A-Center*, Felts was required to have pleaded a specific challenge to the delegation clause in her complaint and her failure to do so meant that an arbitrator should have decided issues of arbitrability, rather than the court. In effect, Defendants urge us to look only at the substance of Felts' complaint and not her motion papers in deciding whether she challenged the delegation clause specifically such that the district court would be able to decide the challenge.

12

**{29}**     We disagree with Defendants and decline to adopt a narrow pleading rule requiring plaintiffs to plead a specific and distinct challenge to the validity of an arbitration provision in their complaints before a court may decide arbitrability issues.  Although the Supreme Court may have considered only the "crux of the complaint" in *Buckeye*, 546 U.S. at 444, the Court looked beyond the complaint in *Rent-A-Center* when it examined whether the respondent there had raised a specific and distinct challenge to the delegation provision of the arbitration agreement at issue.  In deciding the issue, the Court's opinion in *Rent-A-Center* referenced the respondent's "response to *Rent-A-Center*'s motion to compel arbitration" as well as his briefs to the Ninth Circuit and the Supreme Court on the issue and his oral argument before the Supreme Court.  130 S. Ct. at 2779-81.  From the Court's analysis in *Rent-A-Center*, it appears that the Court was more concerned with the substantive nature of the respondent's claims and arguments and not with *where* he had argued those challenges.  *Id.*  We believe that the Ninth Circuit Court of Appeals, in *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, describes what the proper approach is in light of *Rent-A-Center*: "Because the material question is whether the challenge to the arbitration provision is severable from the challenge to the contract as a whole, the inclusion of, or failure to include, a specific challenge in the complaint is not determinative. What matters is the substantive basis of the challenge." *Bridge Fund Capital Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010) (citations omitted).  Accordingly, we consider not only Felts' complaint but also her motion papers and oral argument below to determine whether she raised a distinct challenge to the delegation clause that was severable from her challenges to the validity of the entire Loan Agreement.

**{30}**     We conclude that Felts made two distinct arguments regarding the validity of the delegation clause  in her responses to CANI and CLK's respective motions to compel arbitration.  First, because the delegation clause included a parenthetical prohibiting class arbitration ("you and we agree that any and all claims, disputes or controversies . . . shall be resolved by binding individual *(and not class)* arbitration"), Felts' argument that the ban on class actions rendered the arbitration provision unconscionable was directed to the delegation clause as well.  Second, we conclude that her argument that performance of the delegation clause was rendered impossible under New Mexico law because the NAF had ceased its consumer arbitration business was also a specific challenge to the delegation clause, which assigned the NAF as the arbitral forum for resolving "any and all disputes" between the parties.  These arguments were both clearly directed against the validity of the delegation clause alone, and were distinct from Felts' claims against the Loan Agreements under the UPA, SLA, etc.

**{31}**     The next step in our analysis, based on *Rent-A-Center*, is to determine whether Felts' specific challenges to the delegation clause, as described above, render that clause unenforceable under Section 2 of the FAA.  *See Rent-A-Center*, 130 S. Ct. at 2778-79 (stating that delegation clauses are enforced under § 2 of the FAA and are therefore valid "save upon such grounds as exist at law or in equity for the revocation of any contract;" further stating that unless a delegation clause is specifically challenged and found to be unenforceable, courts must treat it "as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator").

13

**{32}** In this case, we have concluded that Felts' argument under *Fiser* that the class action ban in the arbitration provision was substantively unconscionable was directed to the delegation clause as well. When Felts challenged the class action ban in the proceedings below, she indicated that the class action ban was mentioned three times in the arbitration provision—including the parenthetical in the delegation clause—and she argued that all three of these prohibitions against class relief were unconscionable and unenforceable under our Supreme Court's rationale in *Fiser*. Therefore, when the district court held that these "prohibitions against class relief" were unconscionable and unenforceable under *Fiser*, its holding included an implicit finding that the class action ban in the delegation clause was also unconscionable, thereby rendering it invalid under Section 2 of the FAA.

**{33}** With this framework in mind, we turn to address whether the district court's application of *Fiser* to this case was proper, and we clarify that our discussion below extends to the validity of the delegation clause as well. For reasons that become apparent, we do not reach Felts' second argument targeting the validity of the delegation clause based on the unavailability of the NAF as the arbitral forum.

### 2.    Unconscionability Analysis

**{34}** We next address Defendants' contention that the district court erroneously determined that the class action ban in the arbitration provision was unconscionable under our Supreme Court's holding in *Fiser*. Specifically, the district court found that Felts' claims constituted "small consumer claims within the meaning of *Fiser*" and "[a]s such, [the] prohibitions against class relief [in the arbitration provisions were] contrary to New Mexico's fundamental public policy of encouraging the resolution of small consumer claims."

**{35}** "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21. Contractual unconscionability consists of two types: substantive and procedural. *Id.* "Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair." *Fiser*, 2008-NMSC-046, ¶ 20. "Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." *Id.* In this case, the district court did not address procedural unconscionability, nor did the parties argue it below; therefore, our review is limited to the district court's determination that the arbitration provision was substantively unconscionable on public policy grounds.

**{36}** Because Defendants' primary argument on appeal is that *Fiser* is factually distinguishable from this case in a number of ways, we begin our analysis by summarizing the Supreme Court's decision in *Fiser*. In *Fiser*, our Supreme Court addressed whether an arbitration provision in a computer purchase agreement was unconscionable and unenforceable under New Mexico law because it banned any form of class action relief. *Id.* ¶¶ 12-22. The case involved a putative class action lawsuit filed against a computer

14

manufacturer for misrepresentation in the sale of computers, where each similarly situated customer suffered damages of less than twenty dollars. *Id.* ¶¶ 2-4. The district court granted the computer manufacturer's motion to compel arbitration, agreeing that under the terms of a binding arbitration clause in the plaintiff's computer purchase agreement, the plaintiff was not permitted to seek class action relief and was instead required to arbitrate all disputes. *Id.* ¶¶ 4-5. The Supreme Court reversed after concluding that the class action ban in the agreement was contrary to New Mexico's public policy because "[t]he opportunity for class relief and its importance to consumer rights is enshrined in the fundamental policy of New Mexico and evidenced by our statutory scheme." *Id.* ¶¶ 5, 13. Recognizing that it is fundamental New Mexico policy that consumers have a viable mechanism for dispute resolution, no matter the size of the claim, the Court reasoned that the class action mechanism is an important device for providing consumers with a meaningful remedy in small consumer cases where the "cost of bringing a single claim is greater than the damages alleged." *Id.* ¶¶ 9, 15. Applying this rationale to the arbitration provision at issue, the Court held:

> By preventing customers with small claims from attempting class relief and thereby circumscribing their only economically efficient means for redress, [the d]efendant's class action ban exculpates the company from wrongdoing. Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to retain the benefits of its wrongful conduct. On these facts, enforcing the class action ban would be tantamount to allowing [the d]efendant to unilaterally exempt itself from New Mexico consumer protection laws. . . . Because it violates public policy by depriving small claims consumers of a meaningful remedy and exculpating [the d]efendant from potential wrongdoing, the class action ban meets the test for substantive unconscionability.

*Id.* ¶ 21 (internal quotation marks and citation omitted).

**{37}** Defendants argue that *Fiser* is factually distinguishable from this case because Felts' claims do not constitute "small consumer claims" within the meaning of *Fiser*. In support of this argument, Defendants refer us to the $3,900 in damages Felts is seeking, an amount they contend is over two hundred times greater than the ten to twenty dollars at issue in *Fiser*. We are unpersuaded because we do not view *Fiser* as setting a numerical bar for what constitutes a small consumer claim; rather, the Court there was concerned with circumstances where "the cost of bringing a single claim is greater than the damages alleged." *Id.* ¶ 15. It is under these specific circumstances that the Court viewed class actions to "function[] as a gatekeeper to relief" and to provide small claims plaintiffs with "the right of access to the courts" to seek "a meaningful remedy for one's claims." *Id.* Applying this reasoning to the facts of that case, the Court concluded that it did not need to engage in extensive fact-finding to ascertain whether the plaintiff had met his "evidentiary burden of proving that his damages [we]re outweighed by the cost of bringing an individual claim." *Id.* ¶ 17. Instead, given the "scant" amount of damages being sought, the Court determined that "[i]n light of attorney[] fees, the costs of gathering evidence and preparing the case, and the time spent educating himself on the issues and organizing and presenting

15

the claim, the likelihood that [the p]laintiff's actual costs [would] exceed [the amount of damages alleged] is certain." *Id.* ¶¶ 3, 17. Thus, although it was presented in *Fiser* with a scenario where it was virtually certain that costs would outweigh the amount of damages alleged, the Supreme Court nevertheless indicated that evidentiary fact-finding should occur on this issue. *Id.* We take this opportunity to clarify that, within the meaning of *Fiser*, district courts are required to determine whether a plaintiff's costs in bringing an individual claim outweigh the amount of damages alleged, such that a meaningful remedy for the plaintiff's claims is only available through class action relief. The plaintiff bears the evidentiary burden on this issue.

**{38}** In this case, therefore, the issue before the district court was not whether the actual amount of damages alleged by Felts exceeded the ten to twenty dollar amount in *Fiser*, but whether the costs of bringing an individual claim would exceed the amount of damages she had alleged within the meaning of *Fiser*. Though the district court determined that it did not need to undertake an evidentiary hearing on the issue, it nevertheless entered a factual finding that "the amounts at issue here fall within the small consumer claims as envisioned by *Fiser*." It is apparent from the hearing transcript that the court considered the evidence introduced by Felts on the issue, and we review whether substantial evidence exists to support the court's factual determination.

**{39}** Our review of the record indicates that substantial evidence supports the district court's finding that Felts brought a small consumer claim within the meaning of *Fiser*. Felts submitted twelve different affidavits from attorneys, including two former New Mexico attorneys general, all of which highlighted the numerous costs and perceived difficulties of pursuing an individual claim against Defendants. The affidavits also contained evidence that the class action ban in the arbitration provision acted as an exculpatory clause for Defendants because it was economically unfeasible to bring an individual claim against Defendants otherwise. The attorneys stated that they would not agree to represent a plaintiff in an individual action involving the amount of damages alleged by Felts given the costs and the complexity of the claims at issue, and that they were not aware of any New Mexico attorney who would agree to bring such a lawsuit on an individual basis. We think it is significant that Defendants had the opportunity to, but did not, submit any counter evidence indicating that the class action ban was not exculpatory or that it was economically feasible for Felts to bring her claim individually. We conclude that substantial evidence exists showing that the likelihood that Felts' costs will exceed her damages is reasonably certain and, therefore, she has brought a "small consumer claim" within the meaning of *Fiser*.

**{40}** Defendants also argue that *Fiser* is distinguishable because Felts has raised statutory claims under the UPA which allow her to recover attorney fees and costs in the event she is successful in arbitrating her claims. We are not persuaded by this argument because *Fiser* also involved a UPA claim and the Supreme Court nevertheless determined that the class action ban in the arbitration agreement was unconscionable for public policy reasons. *Fiser*, 2008-NMSC-046, ¶¶ 2, 5. Accordingly, we affirm the district court's determination that the class action ban in the arbitration provision was substantively unconscionable within the meaning of *Fiser* and was, therefore, unenforceable.

16

### 3. Severability

{41}   Lastly, we address Defendants' contention that the district court erroneously determined that the entire arbitration provision was unenforceable rather than severing the unconscionable class action ban from the arbitration provision and enforcing the remainder. In cases where a provision of a contract is determined to be unconscionable, "a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 15, 133 N.M. 661, 68 P.3d 901.

{42}   We hold that the district court properly determined that the class action ban was not severable from the rest of the arbitration provision because we conclude that the class action ban was central to the means by which the parties could resolve their disputes under this particular arbitration provision. *See Fiser*, 2008-NMSC-046, ¶ 24 (determining that an unconscionable class action ban could not be severed from an arbitration agreement because "the class action ban is part of the arbitration provision and is central to the mechanism for resolving the dispute between the parties"); *see also Cordova*, 2009-NMSC-021, ¶ 40 (refusing to sever unconscionable portions of an arbitration agreement because these provisions were "central to the original mechanisms for resolving disputes between the parties"). The class action ban was mentioned several times throughout the arbitration provision and then reinforced again within the separate class action waiver provision; it is clear that it was a key limitation to the mechanisms by which the parties could resolve their disputes. *Cf. Padilla*, 2003-NMSC-011, ¶ 18 (relying on guidance from other jurisdictions and severing an unconscionable de novo appeals clause from an insurance contract because the appeals clause was "separate and distinct" from the arbitration provision and did not affect the "general conduct of the arbitration itself" (internal quotation marks and citations omitted)). Moreover, we see no indication that Defendants have ever disputed that the class action ban is not a key limitation under the terms of the arbitration provision; rather, they have consistently maintained that class-based relief is not available to any party under the provision. Under *Fiser* and *Cordova*, therefore, the district court correctly found that severance was not an available remedy.

{43}   We note that CANI argues that the class action waiver provision, which is separate and distinct from the class action ban in the arbitration provision, evidences the parties' intent that class action waivers are not "central to the parties' bargain." The class action waiver provision states that "*[t]o the extent permitted by law* [the borrower] will not bring, join or participate in any class action as to any claim, dispute or controversy [the borrower] may have against [the lender]." (Emphasis added.) CANI contends that this language is "clear evidence of the parties' intent that the class action waiver would . . . only be enforced by the arbitrator 'to the extent permitted by law' [and t]hus, the parties' . . . desired arbitration to proceed even if the class action waiver were not permitted by law." In support, CANI cites to out-of-state authority where a class action ban was severed from an arbitration agreement because the class action ban clause contained a savings clause banning class actions "unless your state's laws provide otherwise." *See Kristian v. Comcast Corp.*, 446 F.3d 25, 61-62 (1st Cir. 2006) (emphasis omitted) (internal quotation marks omitted).

**{44}** However, even if we were to agree with CANI that the phrase "to the extent permitted by law" indicates that the parties contemplated severability of the class action ban, we determine that severing the class action ban in this case would excise major portions of the arbitration provision in a manner that would lead to the very type of "judicial surgery" that our Supreme Court warned against in *Cordova. See Cordova*, 2009-NMSC-021, ¶ 40 ("We are reluctant to try to draft an arbitration agreement [that] the parties did not agree on. . . . [W]e must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties." (citation omitted)). This is a legitimate policy concern that was also acknowledged by the out-of-state authority cited by CANI. *Kristian*, 446 F.3d at 62 (noting that courts typically prefer "declaring an arbitration agreement unenforceable rather than using severance as a remedy when fundamental elements of the arbitration regime are at issue" and that severing the class arbitration bar would be "difficult to justify" absent a savings clause). We follow this policy rationale and uphold the district court's determination that the class action ban could not be severed from the arbitration provision and thus, the entire arbitration provision was unenforceable.

## CONCLUSION

**{45}** For the foregoing reasons, we affirm the district court's orders denying Defendants' motions to compel arbitration.

**{46}** **IT IS SO ORDERED.**

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

**JONATHAN B. SUTIN, Judge**

**RODERICK T. KENNEDY, Judge**

**Topic Index for *Felts v. CLK Mgmt., Inc.*, Docket Nos. 30,142/29,702**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-AT | Arbitration |
| CP-CA | Class Actions |

**CM**                   **COMMERCIAL LAW**
CM-CC           Consumer Credit


**CN**                   **CONTRACTS**
CN-IN             Interpretation
CN-UC           Unconscionable

**RE**                   **REMEDIES**
RE-AN             Arbitration