This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39868**

**AGRIPINA BUSTAMANTE, Deceased, by the Personal Representative of the Wrongful Death Estate, BARRY GREEN, ESQ.,**

Plaintiff-Appellee,

v.

**ST. THERESA HEALTHCARE AND REHABILITATION CENTER, LLC d/b/a UPTOWN REHABILITATION CENTER, LLC; UPTOWN REHABILITATION CENTER f/k/a ST. THERESA HEALTHCARE AND REHABILITATION CENTER; SUMMIT CARE, LLC; SUMMIT CARE PARENT, LLC; FC-GEN OPERATIONS INVESTMENT, LLC; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; GENESIS HEALTHCARE, INC.; GENESIS HEALTHCARE, LLC; SKILLED HEALTHCARE, LLC; SUN HEALTHCARE GROUP, INC.; and SUNDANCE REHABILITATION HOLDCO, INC.,**

Defendants-Appellants.

(consolidated for purpose of opinion)

**No. A-1-CA-40157**

**BARRY GREEN, ESQ., Personal Representative of the WRONGFUL DEATH ESTATE OF ANTOLINO JACQUEZ,**

Plaintiff-Appellee,

v.

**PEAK MEDICAL FARMINGTON, LLC f/k/a
PEAK MEDICAL FARMINGTON, INC. d/b/a
SAN JUAN CENTER; GENESIS HEALTHCARE,
INC.; GENESIS HEALTHCARE, LLC; GENESIS
HOLDINGS, LLC; PEAK MEDICAL, LLC;
FC-GEN OPERATIONS INVESTMENT, LLC;
GEN OPERATIONS I, LLC; GEN OPERATIONS
II, LLC; SUN HEALTHCARE GROUP, INC.;
SUNBRIDGE HEALTHCARE, LLC;
SUNDANCE REHABILITATION HOLDCO,
INC.; GENESIS ADMINISTRATIVE SERVICES
LLC,**

        Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Kathleen McGarry Ellenwood and Bryan Biedscheid, District Court Judges**

Pitman, Kalkhoff, Sicula & Dentice, SC
Jeffrey A. Pitman
Benjamin E. Reyes
Santa Fe, NM

for Appellees

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Denise Chanez
Patrick Coronel
Albuquerque, NM

for Appellants

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**    In this consolidated opinion,[1] we consider two district courts' determinations about the threshold arbitrability questions within nearly identical arbitration agreements between healthcare facilities and wrongful death estates. Defendants in these related

---

[1]This opinion consolidates two appeals: Case Nos. A-1-CA-39868 and A-1-CA-40157. Because these cases stem from similar underlying claims, involve nearly identical arbitration agreements, and raise related—though distinct—issues, we consolidate the cases for decision. *See* Rule 12-317(B) NMRA.

cases include sixteen different healthcare facilities and their affiliates[2] who appeal the denial of their motions to compel arbitration in claims of wrongful death, negligence, joint and several liability, and punitive damages brought by Plaintiffs as the personal representatives of the wrongful death estates of Agripina Bustamante and Antolino Jacquez.[3] Defendants argue that the district courts erred in making "gateway" or "threshold" determinations about the arbitrability of the claims—contrary to the expressed intent of the parties in the arbitration agreements—and furthermore, any subsequent findings of substantive unconscionability were in error. As the district courts exceeded their authority to make threshold arbitrability determinations under these contracts, we reverse those determinations and remand to be submitted to arbitration.

## DISCUSSION

**{2}** Both cases arise from claims for wrongful death, negligence, joint and several liability, and punitive damages brought by Plaintiffs against Defendants where Bustamante and Jacquez were staying at their times of death. During intake at each facility, representative family members for both residents signed voluntary arbitration agreements on behalf of their relatives. As alleged in the complaints, Defendants failed to properly diagnose symptoms and prevent injuries that led to the wrongful deaths of both individuals. Plaintiffs, under the same representation, filed complaints in district court, and Defendants subsequently filed motions to compel arbitration.

**{3}** Both arbitration agreements are titled as a "Voluntary Binding Arbitration Agreement." The agreements include a delegation clause (the delegation provision), stating that "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the [p]atient's stay at the [c]enter . . . including disputes regarding interpretation and/or enforceability of this Agreement . . . shall be submitted to binding arbitration." The agreements also outline the procedure for demanding arbitration (the procedure provision):

> A demand for arbitration shall be made by the [p]atient or the [c]enter in writing and submitted to the other party to this [a]greement via certified mail, return receipt requested. . . . A demand for arbitration that is not received prior to the expiration of the applicable statute of limitations shall be forever waived and barred.

---

2Defendants between the two cases, with some overlap, include St. Theresa Healthcare and Rehabilitation Center, LLC, Summit Care, LLC, Summit Care Parent, LLC, FC-Gen Operations Investment, LLC, Gen Operations I, LLC, Gen Operations II, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC, Skilled Healthcare, LLC, Sun Healthcare Group, Inc., Sundance Rehabilitation Holdco, Inc., Peak Medical Farmington, LLC, Genesis Healthcare, Inc., Genesis Healthcare, LLC Genesis Holdings, LLC, Peak Medical, LLC, Sunbridge Healthcare, LLC, and Genesis Administrative Services, LLC.

3Barry Green is the personal representative for both wrongful death estates, but was identified as the named plaintiff only in A-1-CA-40157. For simplicity and to avoid confusion, we refer to each estate by the name of the decedent at issue therein.

Also included was a damage limitation provision (the damage provision) that limits any award under arbitration to the lesser of either state caps on damages or "[three] times the amount of the prevailing party's compensatory damages."

{4}     In both cases, the district courts each concluded that they had authority to make threshold arbitrability determinations, and moreover, the arbitration agreements at issue were substantively unconscionable because of a provision that limited all damage awards to 300 percent of compensatory damages. In *Bustamante*, the district court also determined that even if the arbitration agreement was not substantively unconscionable, Defendants could not avail themselves of the agreement because they failed to make a timely demand for arbitration before the applicable statute of limitations had run—as required by the agreement itself—on August 3, 2020.

{5}     "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 18, 392 P.3d 194. "Accordingly, we apply New Mexico contract law in the interpretation and construction of the arbitration agreement." *Hunt v. Rio at Rust Ctr., LLC*, 2021-NMCA-043, ¶ 12, 495 P.3d 634 (alterations, internal quotation marks, and citation omitted). "Contract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803. "Our Supreme Court has stated that courts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 22, 149 N.M. 681, 254 P.3d 124 (alteration, internal quotation marks, and citation omitted). "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218 (internal quotation marks and citation omitted).

{6}     "The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is *clear and unmistakable evidence* that the parties decided otherwise under the terms of their arbitration agreement." *Hunt*, 2021-NMCA-043, ¶ 13 (internal quotation marks and citation omitted); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). "[G]ateway arbitrability issues include matters such as the validity of an arbitration provision, the scope of an arbitration provision, or whether an arbitration agreement covers a particular controversy." *Hunt*, 2021-NMCA-043, ¶ 14 (internal quotation marks and citation omitted).

{7}     The United States Supreme Court has outlined two kinds of threshold questions about arbitration: (1) disputes about arbitrability, "such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy,'" and (2) "the meaning and application of procedural preconditions for the use of arbitration," including "'prerequisites such as time limits, notice, laches, estoppel, and other conditions

precedent to an obligation to arbitrate.'" *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)). The first kind is presumed to be determined by a court, and the second is presumed to be determined by an arbitrator, *id.* at 33-35, as also indicated in the Revised Uniform Arbitration Act of 2000 (RUAA) app. C § 6(b)-(c), which has been adopted in New Mexico under NMSA 1978, Section 44-7A-7(b)-(c) (2001). A challenge to the timeliness of Defendant's demand for arbitration falls into the second category as a procedural condition precedent to arbitration. *See Howsam*, 537 U.S. at 84-85 ("[I]n the absence of an agreement to the contrary . . . issues of procedural arbitrability, i.e., whether prerequisites such as *time limits* . . . and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." (quoting RUAA app. C § 6(c), cmt. 2)).

{8}     "However, even if there is a clear and unmistakable intent to arbitrate, a court may still consider a challenge to the delegation clause in an arbitration agreement under certain circumstances." *Juarez v. THI of N.M. at Sunset Villa, LLC*, 2022-NMCA-056, ¶ 22, 517 P.3d 918. The United States Supreme Court has established that only specific challenges to the validity of the agreement to arbitrate are sufficient to remove such threshold issues from the arbitrator's authority, contrasted against insufficient, general challenges affecting the entire agreement or extrapolating one provision's flaws to the whole. *Felts*, 2011-NMCA-062, ¶ 19. "Our inquiry, then, turns on two questions: (1) [W]as there a clear and unmistakable agreement to arbitrate arbitrability? and (2) [D]id the challenger mount a 'specific challenge' to that agreement?" *Juarez*, 2022-NMCA-056, ¶ 22 (alteration, internal quotation marks, and citation omitted).

{9}     We begin with the language of the delegation clause itself to decide if there is clear and unmistakable evidence that the parties intended to delegate such threshold issues to an arbitrator. The provision itself includes "[a]ny and all claims or controversies . . . including disputes regarding interpretation and/or enforceability of this Agreement." We have held that delegations of enforceability of the agreement indicates an intent to delegate the threshold question of arbitrability. *See id.* ¶ 24 (holding language that "*any* disagreements regarding the *applicability*, *enforceability* or *interpretation* of this agreement will be *decided by the arbitrator and not by a judge or jury*" presented "clear and unmistakable evidence that the parties intended to have an arbitrator decide the threshold issue of arbitrability" (alteration, internal quotation marks, and citation omitted)). This contrasts with cases where we have held that "any disputes regarding the *interpretation* of this agreement shall be submitted to arbitration" to be insufficient to delegate. *Hunt*, 2021-NMCA-043, ¶ 15 (emphasis added) (alterations, internal quotation marks, and citation omitted). From our reading, the delegation clause clearly delegates threshold matters of arbitrability to arbitration. We are unpersuaded by Plaintiffs' argument that delegation clauses must enumerate every potential issue to be litigated, as specific as the unconscionability of the agreement or matters of "procedural arbitrability." An agreement to determine the applicability, *enforceability*, or interpretation of the agreement is sufficient to indicate an intent to submit threshold issues to arbitration, *see Juarez*, 2022-NMCA-056, ¶ 24, and we decline to adjust our precedent

at Plaintiffs' passing suggestion to the contrary. We determine the delegation provisions properly indicate a clear and unmistakable intent to arbitrate.

**{10}** The next step in our analysis requires that Plaintiffs specifically challenged the delegation clause in order to give the district court authority to make such threshold determinations. *See id.* ¶ 22. Without a specific challenge to the delegation clause, such threshold determinations are to be submitted to arbitration per the terms of the contract. We observe that though the nominal rule requires a specific challenge to the delegation clause, in practice this must be a specific challenge that renders the clause unenforceable. *See Felts*, 2011-NMCA-062, ¶¶ 31-33 ("The next step in our analysis, based on *Rent-A-Center*, is to determine whether [the party's] specific challenges to the delegation clause, as described above, *render that clause unenforceable* under Section 2 of the [Federal Arbitration Act]." (emphasis added)). As the two Plaintiffs make somewhat distinct arguments, we review each individually.

**{11}** The Bustamante estate's challenge to the delegation provision appears to be a claim that the arbitration agreement as a whole was breached by Defendant's untimely demand for arbitration. Assuming without deciding that the Bustamante estate is correct that Defendants failed to properly invoke a demand for arbitration, this is not a specific attack on the delegation clause so as to render it unenforceable. Rather, the Bustamante estate's challenge is to Defendant's compliance with a time limit under the agreement, which is a procedural condition precedent that is presumed to be sent to an arbitrator. *See BG Group, PLC*, 572 U.S. at 34-35 (stating "the meaning and application of particular procedural preconditions" are presumed to be adjudicated by an arbitrator); § 44-7A-7(b)-(c). The procedure provision does not state a precondition to contract *formation*, but rather a precondition to contract *enforcement*, the application of which is expressly delegated to the arbitrator under the contract's own delegation clause. *See BG Group, PLC*, 572 U.S. at 40.

**{12}** Moreover, the contract itself delegates this issue to an arbitrator. The parties agree the procedure provision including the timeliness requirement is a valid, binding contractual provision on the parties. As the Bustamante estate argues, the provision *should* apply such that Defendants are precluded by the agreement itself from demanding arbitration. Whether Defendants complied with the provision is a question of enforcement, and questions of enforcement being submitted to arbitration—even if the arbitrator immediately decides the agreement does not apply and even though the district court could easily perform the analysis—is explicitly what Bustamante's representative agreed to when she signed the arbitration agreement.

**{13}** The language of the contract as well as presumptions in statute and precedent indicate this is not an issue for the courts about "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," but rather a dispute for the arbitrator about the satisfaction of a "prerequisite[] such as time limits." *Id.* at 34-35 (internal quotation marks and citation omitted); *see* § 44-7A-7(b)-(c). Accordingly, we hold that as to timeliness, the Bustamante estate did not specifically challenge the delegation clause so as to render it unenforceable, such that threshold

issues of arbitrability could be determined by a district court. *See Felts*, 2011-NMCA-062, ¶¶ 31-33.

**{14}** The Jacquez estate brings a distinct but similarly unavailing challenge: it claims the alleged substantive unconscionability of the damage limitation provision is sufficient to find the entire agreement unconscionable like in *Felts, see id.* ¶ 32, or *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 13, 288 P.3d 888. We begin by identifying that this argument facially appears very similar to the kind of challenge rejected by the United States Supreme Court in *Rent-A-Center* "on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 561 U.S. at 70 (internal quotation marks and citation omitted). The Jacquez estate argues that delegating language within the damage limitation provision reiterating that "[a]ll disputes regarding availability of compensatory and punitive damages . . . shall be decided by the [a]rbitrator or [a]rbitration [p]anel" is sufficient to read its challenge to the damage limitation to also attack the delegation provision. We disagree. Looking to the Jacquez estate's response to Defendant's motion to compel arbitration below, the arguments focus on the one-sidedness and ensuing substantive unconscionability of the damage limit, as well as challenges to a small claims appeal provision and general procedural unconscionability that were later abandoned. As we read the Jacquez estate's arguments below, nothing about the delegation provision is alleged as one-sided such that the challenges based on unconscionability also meaningfully undermine the delegation clause. We decline to read Defendants' valid, lawful, and repeated insistence on delegating threshold issues to their detriment by extending the estate's argument beyond its logical reach. Therefore, we also hold that the district court erred in determining that it had the authority to determine the Jacquez estate's threshold issues because of demonstrated clear and unmistakable intent to arbitrate within the contract and the estate's failure to issue a specific challenge to the delegation provision.

**{15}** Both cases are remanded to the district court with instructions to submit the cases to arbitration. As such, this opinion declines to consider the validity of the underlying unconscionability claims or any allegations of untimely demands for arbitration. As expressed by the binding arbitration agreements, those are questions to be submitted to arbitration.

**CONCLUSION**

**{16}** For the above reasons, we reverse and remand for further proceedings consistent with this opinion.

**{17}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**